**Richard G. HATCHER, Appellant–Petitioner,**

v.

**Thomas V. BARNES, Dozier Allen, Terrance Crossley, Scott King, Norris Chapman, Robert McCraney, Edward D. McKeever and Walter J. Smith, Appellees–Respondents.**

No. 45A03–9106–CV–184.

Court of Appeals of Indiana, Third District.

Aug. 18, 1992.

Douglas M. Grimes, P.C., Gary, for appellant-petitioner.

Gilbert King, Jr., Gary, for appellees-respondents.

GARRARD, Judge.

■ This interlocutory appeal was brought pursuant to Appellate Rule 4(B)(6) to challenge the grant of a partial summary judgment dismissing Hatcher's petition to contest the results of the Democrat mayoral primary election in Gary, Indiana in May 1991. Although the substance of the appeal has been rendered moot by the conduct of the general election in November, 1991,[1] we proceed to decide the appeal on the merits because it raises a substantial question of public interest that may be likely to evade judicial review: May an unsuccessful candidate in a primary elec-

---

1. We do not have before us any question concerning a challenge to the results of that election.

tion contest the results of the election on grounds of fraud despite legislative amendments seemingly eliminating that as a ground for contest under the election contest statute? We conclude that he may.

On May 7, 1991, Hatcher was a candidate for election as the Democrat nominee for Mayor of the City of Gary. The appellees were opposing candidates for that office. After the election Thomas Barnes was declared the winning nominee. On May 14 Hatcher filed a complaint seeking a recount of all votes cast in all districts and precincts. Additionally, he sought to contest the election on the basis of fraud and irregularities and malconduct by the people associated with the election process.

Barnes moved to dismiss asserting that Hatcher's complaint was jurisdictionally defective because it was not properly verified and because it failed to allege the required statutory grounds for contesting an election. Hatcher's response included the contention that if the statute precluded election contests on grounds of fraud, it would unconstitutionally deny him due process under both the state and federal constitutions. The trial court denied Barnes' motion to dismiss the recount claim but granted the motion as to the attempted election contest. Hatcher appeals from the order dismissing his attempt to contest the election.

In May 1991, when Hatcher filed his petition, Indiana's election contest statute, IC 3–12–8–1 *et seq.*, permitted candidates to contest the nomination of another candidate as well as a candidate's election to office. Sec. 1. Section 2 provided:

An election may be contested ... if a petitioner alleges that:

(1) The contestee was ineligible; or

(2) A mistake occurred in the printing or distribution of ballots used in the election that makes it impossible to determine which candidate received the highest number of votes.

Furthermore, Section 6(a) provided:

(a) A petition filed ... [to contest an election] *must* state the following:

(1) That the petitioner desires to contest the nomination or election to an office.

(2) The name and address of each candidate at the election for the office involved.

(3) That the petitioner in good faith believes that:

(A) the person declared nominated or elected does not comply with a constitutional or statutory requirement applicable to a candidate for the office; or

(B) a mistake was made in the printing or distribution of ballots that makes it impossible to determine which candidate received the highest number of votes cast in the election.

(Emphasis added).

The trial court correctly noted that Hatcher's petition did not assert any of the enumerated statutory grounds to contest the election. Instead it tracked the contest provisions as they existed prior to 1988, alleging mistake or fraud in the vote count, irregularities or malconduct of members of the election boards, that votes were counted for fraudulent or non-existent persons and irregularities or malconduct in tampering with the voting machines. The trial court determined that in the absence of any allegation of the statutory grounds for contest, it was without jurisdiction to determine the dispute. It therefore granted the motion to dismiss the count seeking to contest the election results.

■ We are, of course, aware that IC 3–12–8–1 *et seq.* provides a special statutory proceeding to contest elections, and as such its requirements are generally to be treated as jurisdictional. *See, e.g., State ex rel Hodges v. Kos. Cir. Ct.* (1980) 273 Ind. 101, 402 N.E.2d 1231; *Bodine v. Hiler* (1984) Ind.App., 463 N.E.2d 539. In addition, the general rule of construction where the legislature amends a statute to delete specific provisions is that the legislature intended to change the law by the deletion. *Landers v. Pickering* (1981) Ind.App., 427 N.E.2d 716. Thus, it would appear that the legislature by its 1988 amendments to the election contest statute had removed fraud

as a ground for contesting the results of an election. *See Kraft v. King* (1992) Ind. App., 585 N.E.2d 308 (Sullivan, J. dissenting).

On the other hand, it has often been said that fraud of all kinds is abhorrent to the law, and if one person sustains injury through the fraud of another, the courts have jurisdiction to afford a proper remedy. *See* 37 Am Jur 2d, *Fraud & Deceit,* § 323, p. 426, and cases cited. And while election procedures are normally a question for the legislature, more than fifty years ago our supreme court declared:

> We are clear, however, that elections do not 'belong to the *political branch* of the government,' if by that term is meant the legislative branch of the government. Elections belong to the sovereign people. The qualifications of electors and other matters concerning elections are prescribed by the Constitution. The legislature may set up machinery for the conduct of elections, and delegate to ministerial or executive agencies the duty of conducting elections, and may prescribe the procedure by which elections may be contested, so long as they stay within their constitutional powers, and such procedure conforms to the law, such steps and procedure will be governed by the legislative rules prescribed. *But courts have inherent power to protect the sovereign people, and those who are candidates for office or claiming title to or rights in an office from fraud or unlawfulness,* and to confine the legislature within constitutional limits in its control of elections....

*State ex rel. Nicely v. Wildey* (1935) 209 Ind. 1, 8–9, 197 N.E. 844, 847. (Emphasis added).

The traditional remedy afforded by the courts in such instances has been by means of an action in *quo warranto. State ex rel Brown v. Cir.Ct.* (1982) Ind., 430 N.E.2d 786; *Nicely, supra.* Yet the statute defining the cases in which such an action may be brought addresses only a "public of-

fice." IC 34–1–59–1(1). Thus, no Indiana decision has found *quo warranto* available to challenge entitlement to the role of nominee of a political party,[2] and the vast majority of jurisdictions that have addressed the question have determined that a nominee does not hold a public office and *quo warranto* is unavailable. *See* Antieau, *The Practice of Extraordinary Remedies* (Oceana Pub.1987) § 4.04, p. 595 and cases cited therein.

Proceeding from the premise, which we accept and endorse, that a person seeking nomination in a primary election must be accorded the opportunity to challenge fraud in the conduct of that primary election, the question remaining is whether he should be permitted to do so within the framework of the election contest statute.

We conclude that he should. That until the 1988 amendments the statute expressly included alleged fraud as a ground for contest, evidences that such determinations are compatible with the legislative scheme for contesting elections. (The mechanics of the procedure have not been substantially changed by the amendments.) Secondly, it appears to do less violence to the statutes in question to return fraud to the election contest procedure, which expressly contemplates application to primary elections, than to expand the definition of public office for purposes of *quo warranto* to include the nominees of a political party. Perhaps most significantly, the hearing procedures and time limitations imposed by the election contest statute are best calculated to secure a resolution of the issues prior to the conduct of the general election involving the nominee in question.

We have been unable to determine why the legislature removed the provisions dealing with fraud from the contest statute, but we are convinced that it did not do so with any intention of precluding candidates for public office from a remedy if fraud indeed occurred.

It follows that candidate Hatcher was entitled to proceed under IC 3–12–8–1 *et*

---

**2.** *State ex rel Locks v. Peak* (1958) 238 Ind. 468, 151 N.E.2d 809 has been cited by some secondary authorities as standing for the proposition that *quo warranto* is available to challenge nomination. Our reading of that decision does not support this contention.

*seq.* to challenge the results of the primary election for fraud and the court erred in dismissing that count of his petition.

STATON and MILLER, JJ., concur.