Theresa HUFF as Executrix of the Estate of Melton R. Carrell, Appellant–Plaintiff,

v.

BIOMET, INC., Appellee–Defendant.

No. 43A03–9503–CV–69.

Court of Appeals of Indiana.

Aug. 15, 1995.

John C. Hamilton, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for appellant.

Philip A. Whistler, Melissa R. Garrard, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

## OPINION

STATON, Judge.

Theresa Huff ("Huff") as executrix of the Estate of Melton R. Carrell appeals from the trial court's judgment to dismiss her action against Biomet, Inc. ("Biomet"). In her appeal, Huff raises three issues for our review which we separate into four and restate as follows:

I. Whether Huff presented a claim for relief under Ind.Code 22–2–5–1.

II. Whether Huff presented a claim for relief for conversion.

III. Whether Huff presented a claim for relief for money had and received.

IV. Whether Biomet was subject to a constructive trust.

We affirm.

The facts most favorable to the nonmovant, Huff, reveal that Melton R. Carrell ("Carrell") and Biomet entered into an employment agreement ("the Agreement") in June 1990. Carrell, a Texas resident, was hired by Biomet, an Indiana corporation, as a commission sales representative with the exclusive right to promote and sell Biomet products in northeastern and north central Texas. Pursuant to the Agreement, Biomet agreed to pay Carrell a commission on all Biomet products sold within the territory on a bimonthly basis in accordance with its standard commission rate. The Agreement also provided that Biomet could change these commission rates absent Carrell's consent or approval. The Agreement included a choice

of forum and choice of law provision which indicated that all actions filed by either party were to be filed in Indiana and that the laws of Indiana would govern.

Several months after Carrell commenced employment, Biomet paid a $225,000 settlement to the person whom Carrell replaced.[1] In January 1991, Biomet began deducting $2500 from Carrell's bimonthly commission paychecks.[2] These deductions were shown on the face of each commission statement. Carrell continued his employment with Biomet with the reduced commissions until his death on April, 16, 1992.

Following Carrell's death, Huff brought an action against Biomet claiming that Biomet violated the Indiana Wage Payment Statute[3] when it reduced Carrell's commissions. Biomet filed a motion to dismiss or alternatively for a judgment on the pleadings pursuant to Ind.Trial Rule 12(B)(6) and 12(C). Following a hearing, the trial court granted Biomet's motion to dismiss based upon Huff's failure to state a claim upon which relief could be granted.

Huff then filed an amended four count complaint on December 28, 1993 alleging that Biomet: (1) violated the Wage Payment Statute; (2) committed conversion; (3) owed damages for money had and received; and (4) was subject to a constructive trust for wrongfully withholding a portion of Carrell's commissions. Biomet filed a motion to dismiss or alternatively for a judgment on the pleadings on January 20, 1994. A hearing was conducted on May 26, 1994 and the trial court granted Biomet's motion to dismiss on January 4, 1995. Huff now appeals.

■ In determining whether a complaint should be dismissed for failure to state a claim, facts alleged in the complaint must be taken as true. Dismissal is appropriate only where it appears that under no set of facts could plaintiffs be granted relief. *Plummer*

& Co., Inc. v. National Oil & Gas, Inc. (1994), Ind.App., 642 N.E.2d 291, 292, *trans. denied.* We view the pleadings in the light most favorable to the nonmoving party, and we draw every reasonable inference in favor of that party. *Couch v. Hamilton County Bd. of Zoning Appeals* (1993), Ind.App., 609 N.E.2d 39, 41.

## I.

### *Indiana Wage Payment Statute*

Huff contends that the trial court erred in determining that she had not stated a claim under the Indiana Wage Payment Statute ("Wage Payment Statute").

The Wage Payment Statute provides in pertinent part:

> Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

I.C. 22–2–5–1(a).

Before determining whether Huff stated a claim under the statute, we must first decide whether the statute applies to an out-of-state resident employed by an Indiana business.

■ Huff contends that the Wage Payment Statute is applicable to Biomet, an Indiana corporation, and Carrell, its Texas employee, because the choice of law and choice of forum provisions of the Agreement reflect their intent that Indiana law was to govern any disputes regarding the employ-

---

1. Neither the parties nor the record indicate the reason for or the nature of the settlement.

2. In both her complaint and brief, Huff indicates that these decreased payments began in January 1990. However, the Agreement shows that Carrell was not hired by Biomet until June 1990. The complaint also states that the settlement

which allegedly triggered the reduced commissions occurred a few months after Carrell was hired. We surmise from these facts that Carrell's reduced commissions commenced in January 1991 not January 1990.

3. I.C. 22–2–5–1 *et seq.*

ment relationship.[4] Biomet counters that Carrell is not subject to the protection of the Wage Payment Statute because the statute applies only to employees who are employed in Indiana.

Both parties cite *American Bus Lines v. Page* (1978), 176 Ind.App. 5, 373 N.E.2d 928, to support their positions. In *American Bus Lines*, this court analyzed whether the Wage Payment Statute applied to an employee who moved to Indiana from Ohio but continued to receive his wages in Ohio after expressly requesting that his wages be paid in accordance with Indiana's Wage Payment Statute. *Id.* 373 N.E.2d at 933. I.C. 22-2-5-1 then read, in pertinent part:

> "Every person, firm, corporation or association, their trustees, lessees, or receivers appointed by any court, whatsoever doing business in [the State of Indiana] shall pay *each employee thereof* at least semi-monthly or biweekly, if requested...."

1971 Ind. Acts, P.L. 350–Sec. 1. (emphasis added). Based upon this language, the court stated:

> [A]ppropriate interpretation of IC 1971, 22-2-5-1, ... assumes that the phrase 'each employee thereof' designates one who is employed in the doing of business in this state, viz, the one must be employed in Indiana before he comes within the provisions of the Indiana wage statute.

*Id.* at 932–933. The court then affirmed the trial court's finding that because the employee was employed in Indiana, he was protected under the statute. *Id.*

Biomet relies upon *American Bus Lines* to conclude that Huff has no claim under the statute because Carrell was not employed in

Indiana. However, the legislature amended the specific language of the Wage Payment Statute which the court relied upon to reach its conclusion in *American Bus Lines*.

■■■ When the legislature amends its provisions, it is presumed to have responded to prior appellate decisions construing these provisions. *Accredited Surety & Casualty Co. v. State* (1991), Ind.App., 565 N.E.2d 1131, 1133. It is a general rule of construction that when the legislature amends a statute to delete specific provisions, the legislature intended to change the law by the deletion. *Hatcher v. Barnes* (1992), Ind.App., 597 N.E.2d 974, 975.

The Wage Payment Statute was amended in 1989 to exclude the term "thereof". *See* 1989 Ind. Acts, P.L. 216–1989, Sec. 2.

Because the specific language of the statute which the court relied upon in *American Bus Lines* has been amended, we decline to follow its rule. Instead, we must determine whether the Wage Payment Statute, as amended, was applicable to Carrell's employment with Biomet.

■■ In examining a statute, we presume that words appearing in a statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied.* The Wage Payment Statute does not impose any restriction on the employee but instead the plain language of the statute dictates that the applicability of the Wage Payment Statute rests solely upon whether the employer is

---

4. The forum selection and choice of law provision of the Agreement provided:

> As you are aware, Biomet has many distributors across the United States. It is agreed that, in the event of any dispute between us, the laws of the State of Indiana shall govern the validity, performance, interpretation, enforcement and any other aspect of our agreement or relationship. It is further agreed that any and all actions concerning any dispute arising under our relationship shall be filed and maintained only in a state or federal court of competent jurisdiction sitting in the State of Indiana.

Record, p. 12. When the parties to a contract agree on the law which should control the contract, we will give effect to their agreement. *Homer v. Guzulaitis* (1991), Ind.App., 567 N.E.2d 153, 156, *trans. denied.* Before a court may disregard or set aside an agreed forum-selection clause, the party opposing the enforcement of the clause must clearly show that the enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Kimco Leasing, Inc. v. Ransom Junior High School* (1990), Ind.App., 556 N.E.2d 1371, 1372. Neither party questions the application of this provision; we therefore consider it binding.

doing business in Indiana. *See* I.C. 22–2–5–1(a). Because Biomet was a corporation doing business in Indiana, we determine that it was subject to the Wage Payment Statute.

■ Because the parties were subject to the statute, we may now determine whether Huff's complaint alleges sufficient facts to support a claim under the Wage Payment Statute.

■ The Wage Payment Statute is a penal statute which, being in derogation of the common law, must be strictly construed. *Fardy v. Physicians Health Rehabilitation Services, Inc.* (1988), Ind.App., 529 N.E.2d 879, 881, *reh. denied.* The statute contains three distinct regulations: (1) employee's wages must be paid in money;[5] (2) if requested, employers must pay employees semi-monthly or bi-weekly; and (3) employees, upon separation from employment, must be paid the amount due to them at their next and usual payday (unless their whereabouts are unknown). *Id.* at 882. The statute is concerned with the time of payment of wages and its thrust is to create a statutory requirement that wages be paid semi-monthly or bi-weekly if so requested by the employee. *Id.* at 881. The statute only addresses the frequency with which an employer must pay its employees, not the amount it must pay. *Hendershot v. Carey* (1993), Ind.App., 616 N.E.2d 412, 415.

■ It is essential to a successful assertion of a claim under the statute that the employee make a request for bi-weekly or semi-monthly payment and that such request have been made "prior to or concurrent with the period of employment" at issue and not after a wage dispute has arisen. *Pope v. Wabash Valley Human Services, Inc.* (1986), Ind.App., 500 N.E.2d 209, 212, *trans. denied* (citations omitted). Thus, if the employee does not make the requisite demand or request for payment under the statute, the employer and employee may agree to a method of payment other than semi-monthly or bi-weekly. *Id.* One cannot therefore recover pursuant to such a statute unless he brings himself clearly within the ambit of its provisions. *City of Hammond v. Conley* (1986), Ind.App., 498 N.E.2d 48, 52.

Huff's complaint merely disputes the amount Biomet was required to pay Carrell. Huff does not allege any facts which concern the time and frequency of Biomet's payments to Carrell. Furthermore, Huff fails to set forth any facts in her complaint to indicate that Carrell demanded a semi-monthly or bi-weekly method for the payment of his wages. Huff's complaint does not indicate that Carrell disputed or even questioned the deducted portions of his commissions. In sum, Huff has failed to allege any material facts which would support a claim that Biomet was liable under the Wage Payment Statute. Accordingly, we conclude that the trial court properly dismissed her claim under the Wage Payment Statute.

## II.

### *Conversion*

■ Huff contends that the trial court erred in dismissing count II of her complaint in which she alleged that Biomet's withholding of Carrell's commissions constituted a continuing conversion in violation of I.C. 34–4–30–1.

■ I.C. 34–4–30–1 allows a person who has suffered a pecuniary loss as a result of a violation of I.C. 35–43[6] to bring a civil action to recover the loss. Yet, a criminal conviction under I.C. 35–43 is not a condition precedent to recovery in a civil action brought under I.C. 34–4–30–1. *Kopis v. Savage* (1986), Ind.App., 498 N.E.2d 1266, 1270.

■ To constitute the tort of conversion there must be an appropriation of the personal property of another. *Stevens v. Butler* (1994), Ind.App., 639 N.E.2d 662, 666, *trans. denied.* Money may be the subject of an action for conversion, so long as it is

---

**5.** Although the Wage Payment Statute does not define "wages", this court has determined that commissions paid on a regular basis are wages under the statute. *Licocci v. Cardinal Associates, Inc.* (1986), Ind.App., 492 N.E.2d 48, 56, *trans. denied.*

**6.** Article 43 of the Indiana Code deals with offenses against property which include criminal conversion.

capable of being identified as a special chattel. *Id.* The money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose. *Id.* The refusal to pay a debt will generally not support a conversion action. *National Fleet Supply, Inc. v. Fairchild.* (1983), Ind.App., 450 N.E.2d 1015, 1019.

No Indiana case has examined whether an employer's reduction of an employee's commissions or wages would support a civil action for conversion.[7] However, our courts have examined certain conversion claims involving money.

In *Kopis,* a seller received a $40,000 deposit toward the purchase of property. *Kopis, supra,* at 1269. The seller commingled the deposit with other unrelated accounts and refused to refund the money when the deal collapsed. *Id.* In reversing the trial court's conclusion that this constituted conversion, we explained:

> We are unable to find anything in the agreement which suggests [Seller] was under any obligation to return *the specific* $40,000 which [Buyer] had given him. The parties did not agree to set up an escrow account or deliver the money to any third party for safekeeping. We can find nothing in the conduct of the parties or in the wording of the receipt which indicates that the parties intended for [Buyer] to retain ownership or possessory rights in the $40,000.

*Id.* at 1270 (emphasis in original).

In *Stevens,* several purchasers of real estate forwarded money to a real estate broker for the purchase of realty. *Stevens, supra,* at 664. After failing to close on the properties, the purchasers sought a refund of their deposits which the broker ignored. *Id.* The purchasers brought a conversion action against the broker and the trial court awarded summary judgment in favor of the purchasers on the conversion claim which we reversed on appeal. *Id.* at 665. We noted that the funds were not placed in an escrow account, were not forwarded to a third party for safekeeping, nor was a possessory interest in the specific funds maintained by the purchasers. *Id.* at 667. We concluded that the broker's refusal to pay the deposits merely amounted to a refusal to pay a debt which did not support a conversion claim. *Id.* See also *National Fleet, supra* at 1019 (seller's retention of deposit after breach of contract warranted liability for purchase price but not punitive damages as seller was not guilty of appropriating Fairchild's personal property); *Excel Industries Inc. v. Signal Capital Corp.* (1991), Ind.App., 574 N.E.2d 946, 948, *trans. denied* (deposit for credit application was not a separate, identifiable chattel in which the depositor retained a property interest in those specific funds and thus, failure to return the deposit did not constitute conversion) and *compare Midland–Guardian Co. v. United Consumers Club Inc.* (1987), Ind.App., 502 N.E.2d 1354, 1355, *trans. denied* (finance company's failure to return and knowing exertion of unauthorized control of specific funds held in holdback reserve accounts constituted criminal conversion not the mere failure to pay a debt).

Here, Huff seeks payment of money which was allegedly wrongfully withheld from Carrell's commissions. Huff alleges no facts which would indicate that Carrell entrusted money to Biomet for a particular purpose. Moreover, as in *Kopis, supra,* and *Stevens, supra,* Huff has not shown that Biomet retained specific funds which could be directly attributed to Carrell. The facts alleged in Huff's complaint do not support a claim for conversion. Accordingly, we conclude that the trial court did not err in dismissing count II of her complaint.

### III.

### *Money Had and Received*

Huff contends that her complaint alleges sufficient facts to support a claim under the equitable theory of money had and re-

---

7. Other states have addressed this issue. *See Temmen v. Kent–Brown Chevrolet Co.* (1980), 227 Kan. 45, 605 P.2d 95, 99 (employer's withholding of employee's wages without written authority does not constitute tort of conversion) and *Gronberg v. York* (1978), Tx.App., 568 S.W.2d 139, 144 (employer's withholding of weekly commissions for purpose of establishing pension fund did not support claim of conversion).

ceived, and thus, the trial court erred in dismissing count III of her complaint.

The well-settled rule governing an action for money had and received provides:

> [A]n action for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such circumstances that in equity and good conscience he ought not to retain the same, and which money, *ex aequo et bono,* belongs to the plaintiff, and where money has been received by mistake of facts, or *without consideration,* or upon a consideration that has failed, it may be recovered back. Such an action rests upon an implied promise and may be maintained against the person who received money from the plaintiff under circumstances which in equity and good conscience he should not retain.

*Pufahl v. National Bank of Logansport* (1958), 129 Ind.App. 191, 154 N.E.2d 119, 120–121, *reh. denied* (emphasis in original). Construing the facts alleged by Huff as true, Huff has not shown how Biomet received money from Carrell which would warrant the application of this equitable theory.

■ Moreover, the existence of a valid express contract for services precludes implication of a contract covering the same subject matter. *Kincaid v. Lazar* (1980), Ind.App., 405 N.E.2d 615, 619. When the rights of parties are controlled by the contract, recovery cannot be based upon a theory implied in law. *Id.* Only when a party avers that he has performed a substantial part of his obligations under a contract and that the other party refused to perform any obligation thereunder can the contract be rescinded, warranting the need for equitable remedies. *See Yost v. McCarty* (1952), 123

Ind.App. 288, 108 N.E.2d 718, 721, *trans. denied.*

Here, Carrell and Biomet's relationship was controlled by an express contract and Huff does not set forth any facts which would indicate that Biomet refused performance of its obligations under the contract compelling rescission, and causing the need for an equitable remedy. Furthermore, Huff does not allege that the Agreement was invalid or not binding on the parties. The existence of this express contract precludes recovery on an equitable theory such as money had and received. *Kincaid, supra,* at 619. Accordingly, we determine that the trial court did not err in dismissing Count III of Huff's complaint.

## IV.

### *Constructive Trust*

■ Finally, Huff contends that the trial court erred in dismissing Count IV of her complaint in which she alleged that the monies Biomet reduced from Carrell's commissions were subject to a constructive trust.

■ A constructive trust is a fiction of equity, devised for the purpose of making equitable remedies available against one who through fraud or other wrongful means acquires property of another. *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775, 779. Thus, fraud, either actual or constructive,[8] is a prerequisite to the imposition of a constructive trust. *Kopis, supra,* at 1272. We will find a constructive trust only where there has been a breach of a confidential or fiduciary relationship. *Id.* A confidential or fiduciary relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Matter of Estate of Neu* (1992), Ind.App., 588 N.E.2d 567, 570.

---

**8.** To maintain an action for actual fraud, there must be a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation must be relied upon to the detriment of the relying party. *Adoptive Parents of M.L.V. v. Wilkens* (1992), Ind., 598 N.E.2d 1054, 1058. Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. *Biberstine v. New York Blower Co.* (1993), Ind.App., 625 N.E.2d 1308, 1315, *trans. dismissed.* The law infers fraud from the relationship of the parties and the circumstances which surround them. *Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197, *trans. denied.*

Here, Huff does not allege what, if any, material misrepresentations Biomet made to Carrell regarding the reduced commissions nor does Huff allege that the parties were in a confidential or fiduciary relationship in which Biomet abused Carrell's confidence and improperly exerted its influence over him. In sum, the facts alleged by Huff do not warrant the imposition of a constructive trust. Accordingly, we conclude that the trial court did not err in dismissing Count IV of Huff's complaint.

Affirmed.

HOFFMAN and RUCKER, JJ., concur.