**NEWLAND RESOURCES, LLC,**
Appellant/Cross Appellee–
Defendant,

Sam Sutphin; White River Venture Partners, L.P.; Cornelius M. Alig; Greenleaf, LLC; James B. Harmon; Ecoholdings, LLC; John Michael Kensill; and Ecosource, LLC, Cross–Appellees–Defendants

v.

**The BRANHAM CORPORATION,**
Appellee–Plaintiff.

No. 06A01–0802–CV–79.

Court of Appeals of Indiana.

Dec. 31, 2009.

Melissa R. Garrard, Melissa R. Garrard, Attorney at Law, P.C., Lebanon, IN, Attorney for Appellant.

Donn H. Wray, Mickey J. Lee, Stewart & Irwin, Indianapolis, IN, Attorney for Appellee.

Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Cross-Appellees.

## OPINION

FRIEDLANDER, Judge.

Newland Resources, LLC (Newland) appeals from the trial court's judgment on the jury's verdict in favor of The Branham Corporation (Branham) on Branham's breach of contract claim against Newland. Broadly speaking, the following issue is presented for our review: Did the trial court err in its interpretation of the contractual provisions triggering the entitlement to and calculation of a success fee?

We affirm.

Newland was organized on October 11, 1994 and originally formed to develop real estate. Sometime in 1992 or 1993, prior to its organization, Newland began to explore a possible development project in Boone County consisting of 270 acres at the intersections of State Road 334 and I–65 now known as Royal Run Subdivision. Newland considered several options for water and sewer utility service to its residential subdivision in the Royal Run area before ultimately forming a wholly-owned utility operating company in April 1996 known as Boone County Utilities, LLC, (BCU). BCU was to provide water and sewer utilities to the Royal Run area.

Newland entered into an agreement with Branham (the Branham Agreement) for assistance in negotiating a contract with the City of Indianapolis for the acceptance of sewage flow from the BCU service area, and in negotiating a contract with the Indianapolis Water Company for selling water to BCU for delivery to the BCU service area. The Branham Agreement contained the following compensation provision:

5. Compensation

Client shall:

(a) pay Branham a monthly, nonrefundable retainer of $3,000.00 ("Monthly Fee") commencing on the Effective Date and terminating when all services necessary to obtain the goals and objectives of this Agreement have been achieved as determined in the sole discretion of the Client; provided however, if this Agreement is executed on a day other than the first day of any month then the Monthly Fee shall be prorated by dividing the Monthly Service Fee by the total number of days in the commencement month and multiplying the resulting quotient by the remaining days in the commencement month;

(b) reimburse Branham reasonable out of pocket expenses upon receipt of Branham's invoice in accordance with Client's policy for travel, and long distance communications, such expenses to be supported by receipts or other proof of expenditures; and

(c) pay Branham a success fee calculated as follows upon the earlier of:

(i) 8% of the fair market value of the total ownership interest in BCU as may be determined by a qualified appraiser as mutually agreed upon by the Parties in excess of Three Million Five Hundred Thousand Dollars not later than five years from the first receipt of any utility service fee by BCU; provided however, in the event the Parties do not mutually agree upon a qualified appraiser, then each Party shall select its own appraiser who shall perform their own appraisals and who in turn shall select a third appraiser and the fair market value of the total ownership interest in BCU shall be determined by averaging the three appraisals; or

(ii) 8% of the total purchase price of BCU in any sale thereof to a third party in excess of Three Million Five Hundred Thousand Dollars.

*Appellant's Appendix* at 68.

BCU entered into a purchase agreement with the Town of Whitestown (the Whitestown Purchase Agreement) on February 11, 2004. Article I, 1.8, of the Whitestown Purchase Agreement defined the term "Purchased Assets" as:

(a) the Newland Real Estate and all of the tangible and intangible assets, properties, rights, or interests of every kind and description, whether real, personal, or mixed, that are owned, held, leased,

licensed, or used by BCU in the operation of the Utilities, including but not limited to contract rights, prepaid insurance, prepaid insurance premiums, any other prepaid assets, goodwill, intellectual property rights, software, vehicles, and customer information, and

(b) all easements, rights-of-way, and rights of ingress or egress, whether now or hereafter in existence, currently utilized, necessary, proper, or desirable, for the installation, operation, construction, and maintenance of the Utilities.

*Id.* at 724. Article III of the Whitestown Purchase Agreement provided that Whitestown would transfer to BCU $4,200,000 at closing. *Id.* at 728. Article II, 2.4, of the Whitestown Purchase Agreement further provided in pertinent part:

In addition to the Purchased Assets, on and after the Closing Date, Whitestown shall assume the following:

(i) the obligations of BCU to Valenti Held Real Estate Group, LLP, as set forth on the attached Schedule 2.4(i), which obligations will be assumed pursuant to a Novation and Substitution Agreement, to be negotiated between Whitestown, BCU, and Valenti Held Real Estate Group, LLP; and

(ii) the obligations of BCU pursuant to those agreements set forth on the attached Schedule 2.4(h); provided, however, that Whitestown shall not assume BCU's obligation to pay any funds pursuant to any recoupment agreements listed on Schedule 2.4(ii) to the extent BCU received such funds prior to the Closing of this transaction; and no other obligations.

*Id.* at 727–28.

BCU (debtor) ultimately filed a petition for Chapter 11 bankruptcy (the Bankruptcy Matter). Valenti Held Real Estate Group, LLP (Valenti) was a named creditor and interested party in the Bankruptcy Matter. In addition to the Bankruptcy Matter, there was a matter pending before the Indiana Utility Regulatory Commission (IURC) relating to the continued operation of BCU (the IURC Matter). Valenti claimed that the order issued by the IURC in the IURC Matter entitled Valenti to refunds of $1,743,678.33 (Refund Claim) and Valenti claimed and certified in the Bankruptcy Matter that it was entitled to an additional $2,478,496.00 (Certified Claim) in reimbursement for sewer and water facilities previously constructed and dedicated to BCU. Valenti's Refund Claim and Certified Claim totaled $4,222,174.33.

On February 11–12, 2004, Whitestown, BCU, and Valenti entered into a Novation and Substitution Agreement (the Novation Agreement) that provided that Whitestown would pay Valenti a cash amount of $900,000.00 and Whitestown would issue a Series B Junior Bond (Valenti Bond) for $3,322, 175.00. The Novation Agreement was conditioned upon approval by the Bankruptcy Court in the Bankruptcy Matter and any other regulatory approval of the Novation Agreement and the Purchase Agreement. Upon such approval, Valenti agreed that the Whitestown obligations under the Novation Agreement operated as a novation and substitution of any and all obligations of BCU under prior agreements.

BCU, Debtor, filed in the Bankruptcy Court a Disclosure Statement Relating To Debtor's Amended Liquidating Plan of Reorganization (Disclosure Statement) and an Amended Liquidating Plan of Reorganization (Amended Plan). The Disclosure Statement and the Amended Plan established that Whitestown would pay $4,200,000.00 to BCU, and would pay $4,222,175.00 to Valenti to resolve BCU's obligations to Valenti. A Motion to Sell was submitted to the Bankruptcy Court seeking approval for the sale of BCU to

Whitestown. The Bankruptcy Court held a hearing on the Motion To Sell and issued its Memorandum of Decision granting the Motion to Sell and approving the Purchase Agreement and the Novation Agreement in its entirety subject to immaterial modification. The closing occurred on July 20, 2004.

On October 31, 2005, Branham filed its First Amended Complaint against Newland and others. After the answer and affirmative defenses were filed and several orders were issued, the only remaining count of the Branham complaint alleged a breach of contract against Newland, the only remaining party, pertaining to the calculation and payment of the success fee. Newland filed a motion for partial summary judgment that was denied, and the matter proceeded to a jury trial. Newland's motions for judgment on the evidence were denied by the trial court and the jury, after determining liability, ultimately returned a verdict in favor of Branham for damages in the amount of $397,853.92 using the formula provided in Jury Instruction No. 5. The trial court entered judgment on the jury verdict. Newland's subsequent motion to correct error was denied after a hearing on the matter and Newland now appeals.[1]

Newland first argues that the trial court erred by denying its motion for partial summary judgment on the issue of damages. Summary judgment is appropriate when the evidence establishes that there exists no designated issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915 (Ind.Ct. App.2007). On appeal, we consider all of the designated evidence in the light most favorable to the nonmoving party. *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143 (Ind.Ct.App.2006). When reviewing a trial court's denial on a motion for summary judgment, the appellate court undertakes the same inquiry as the trial court. *Liberty Mut. Fire Ins. Co. v. Beatty*, 870 N.E.2d 546 (Ind.Ct.App.2007).

■ Here, both sides argued below that the Branham Agreement was unambiguous, but argued differing interpretations of the meaning of "total purchase price" and the calculation of the success fee. Newland argued that the total purchase price was determined by the Closing Agreement less adjustments, while Branham argued that the total purchase price was the price established in the Whitestown Purchase Agreement and the Novation Agreement. Under Newland's interpretation, Branham was entitled to no success fee or, at most, $26,940.42. Branham, on the other hand, argued that the total purchase price exceeded $9,000,000.00 and that the success fee should be calculated based on that figure. As the parties disputed the meaning of "total purchase price" and the calculation of the success fee contained in the Branham Agreement, and designated evidence to support their differing calculations, the trial court correctly determined that disposition of the damages issue by summary judgment was inappropriate. The trial court did not err.

On appeal, Newland attempts to bolster its argument that summary judgment should have been granted in its favor by arguing that the success fee was not triggered because: 1) there was not a sale of BCU, but rather a sale of its assets; and 2) the sale did not occur prior to the expiration of the appraisal provision in Paragraph 5(c)(i) of the Branham Agreement. Branham correctly notes that Newland argued to the trial court that "the only compensation provision at issue in this case is paragraph 5(c) of the Branham

---

1. Oral argument was held in Indianapolis, Indiana on October 5, 2009.

[Agreement] which provides that Newland should 'pay Branham a success fee'" under 5(c)(ii) of the Branham Agreement. *See Appellant's Appendix* at 85. Further, Branham correctly observes that Newland, for purposes of its summary judgment motion only, presumed that an assets sale would trigger calculation of the success fee under 5(c)(ii) of the Branham Agreement. *See id.* at 89.

As a general rule, a party cannot argue on appeal an issue that was not properly presented to the trial court. *Pitman v. Pitman,* 717 N.E.2d 627(Ind.Ct.App.1999). Appellate review of the issue is waived when it is not presented before the trial court. *Id.* "This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties." *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 650 (Ind.Ct.App. 2002). "Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision." *Id.* "The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *Id.* Branham relied upon Newland's representations to the trial court to respond to Newland's motion for summary judgment, and the trial court decided the issue as it was raised before it. We cannot say that these arguments support a conclusion that the trial court erred in its decision on partial summary judgment on the issue of damages.

Next, Newland argues that the trial court erred by denying its motions for judgment on the evidence and its motion to correct error. Newland contends that the evidence does not support the inclusion of

the following in the purchase price for BCU: 1) Sums paid to Eagle Alliance Church and Stonegate/Reitz Properties; 2) consideration paid to Valenti pursuant to the Novation Agreement; and 3) consideration paid to Newland for real estate. Newland also contends that the evidence does not support the jury's valuation of the purchase price of BCU's net assets.

The standard of review on a challenge to a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence. We will examine only the evidence and reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper.

*State Farm Mut. Auto. Ins. Co. v. Noble,* 854 N.E.2d 925, 931 (Ind.Ct.App.2006). Furthermore, "[w]e have held that when a defendant moves for a judgment on the evidence and then introduces evidence on his own behalf after the motion is denied, the defendant has waived any alleged error regarding the denial of the motion." *Hartford Steam Boiler Inspection & Ins. Co. v. White,* 775 N.E.2d 1128, 1134 (Ind. Ct.App.2002); *see also* Ind. Trial Rule 50(A)(6) ("A motion for judgment on the evidence made at one stage of the proceedings is not a waiver of the right of the court or of any party to make such a motion ... except that error of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted.").

First, Newland contends that there is no evidence to support the jury's verdict as to the purchase price of the net assets of BCU. To resolve this issue, Newland would have this court engage in an analysis of the distinction between the sale of a company and the sale of its assets. Newland further claims that the jury erroneously included in the purchase price of BCU the consideration, $250,000.00, paid by Whitestown to Newland for its real estate. Newland also argues that while the jury accurately valued the claims of Eagle Alliance Church and Stonegate/Reitz Properties, at $26,000.00 and $25,000.00 respectively, the jury erroneously included those sums in its calculation of the total purchase price of BCU. Newland asserts that counsel for Whitestown testified that those claims against BCU were not paid by Whitestown, but were instead paid for by BCU from the funds received via The Whitestown Purchase Agreement. Newland also claims that the jury mistakenly included in the purchase price the consideration paid to Valenti pursuant to the Novation Agreement. Newland argues that the inclusion of that sum is improper because Branham failed to establish that the consideration paid to Valenti constituted an assumption by Whitestown of a valid financial liability of BCU.

 Branham aptly notes that on appeal we refuse to attempt to interpret the thought process of the jury in arriving at its verdict. *See Linton v. Davis,* 887 N.E.2d 960 (Ind.Ct.App.2008). It is well settled in both the criminal appeal and civil appeal contexts that we will presume that the jury followed the law contained in the trial court's instructions and applied that law to the evidence before it. *See id.; Tormoehlen v. State,* 848 N.E.2d 326 (Ind. Ct.App.2006). Again, while Newland would speculate about the jury's inclusion of items in its determination of the purchase price and then re-litigate its legal arguments here on appeal based on that speculation, we are constrained to review whether sufficient evidence exists in the record in the light most favorable to Branham on the essential issues of this controversy. As spelled out below, the record supports the trial court's decision to allow the issues to be decided by the jury.

The Bankruptcy Court approved the Whitestown Purchase Agreement and the Novation Agreement. The evidence establishes that the Town of Whitestown paid BCU $4,200,000.00 pursuant to The Whitestown Purchase Agreement, an agreement that also established Whitestown would assume the obligations of BCU to Valenti pursuant to the terms of the Novation Agreement. The Novation Agreement provided that Whitestown would pay Valenti a cash amount of $900,000.00 and Whitestown would issue the Valenti Bond for $3,322,175.00, the exact amount of Valenti's Refund Claim and Certified Claim totaling $4,222,174.33 in the Bankruptcy Matter. Consequently, there was sufficient evidence before the jury on the issue of the purchase price to support the jury's calculation of the success fee. The jury was instructed to subtract $3,500,000.00 from the purchase price to arrive at the amount upon which the success fee was calculated. Although Newland presented evidence supporting a differing view, the jury's verdict of $397,853.92 was within the range of evidence presented at trial.

 When reviewing a damage award, we consider only the evidence that supports the award along with the reasonable inferences therefrom. *Cox v. Matthews,* 901 N.E.2d 14 (Ind.Ct.App.2009). A damage award will be upheld if it falls within the bounds of the evidence. *Id.* "The jury has broad discretion in deter-

mining an award of damages, and when the evidence is conflicting, the jury is in the best position to assess the damages." *Id.* at 23. "In other words, if the award is within the scope of the evidence and can be explained on any reasonable ground, the award will not be deemed the result of improper considerations." *Id.* Accordingly, we find that the trial court did not err by denying Newland's motions for judgment on the evidence.

▆ For similar reasons, we find that the trial court did not err by denying Newland's motion to correct error. First, Indiana Trial Rule 50(A)(4) allows a party to move for judgment on the evidence in a motion to correct error. *Henri v. Curto*, 908 N.E.2d 196 (Ind.2009). "Pursuant to Indiana Trial Rule 59(J), a trial court is required to take such action as will cure any 'prejudicial or harmful error,' to grant a new trial on a motion to correct error if the court determines that the jury verdict is 'against the weight of the evidence,' and to enter judgment if it determines that the jury verdict is 'clearly erroneous as contrary to or not supported by the evidence.'" *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind. 2003) (citing Ind. Trial Rule 59(J)). "The standard of appellate review of trial court rulings on motions to correct error is abuse of discretion." *Id.* As previously stated, there was sufficient evidence in the record in the light most favorable to Branham on the essential issues of this controversy. The record supports the trial court's decision to allow the issues to be presented to the jury, and the jury's decision was not against the weight of the evidence.

Additionally, Newland argues that the trial court abused its discretion by denying its motion for a new trial. Newland contends that since the jury's verdict was against the weight of the evidence, the trial court abused its discretion by denying Newland's motion.

▆ "A trial court has wide discretion to correct errors and to grant new trials." *Leroy v. Kucharski*, 878 N.E.2d 247, 250 (Ind.Ct.App.2007). In determining whether to grant a new trial, "the trial judge has an affirmative duty to weigh conflicting evidence." *Id.* (citing *Precision Screen Machs., Inc. v. Hixson*, 711 N.E.2d 68, 70 (Ind.Ct.App.1999)) (quoting *Memorial Hospital of South Bend, Inc. v. Scott*, 261 Ind. 27, 33, 300 N.E.2d 50, 54 (1973)). The trial court sits as a thirteenth juror and must determine whether in the minds of reasonable men a contrary verdict should have been reached. *Pendleton v. Aguilar*, 827 N.E.2d 614, 624 (Ind.Ct.App. 2005). "The trial court, as the thirteenth juror, hears the case along with the jury, observes the witnesses for their credibility, intelligence and wisdom, and determines whether the verdict is against the weight of the evidence." *Id.* at 624. We will reverse the trial court's decision to grant or deny a new trial only for an abuse of discretion. *Pendleton v. Aguilar*, 827 N.E.2d 614. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Id.* We review the record only to see if: (a) the trial court abused its discretion; (b) a flagrant injustice has occurred; or (c) the appellant has presented a very strong case for relief from the trial court's order granting a new trial. *Id.* "A trial court is advised to use great caution in substituting its evaluation of the evidence for a contrary evaluation made by the jury." *Indian Trucking v. Harber*, 752 N.E.2d 168, 178 (Ind.Ct.App.2001).

In large part, Newland argues that BCU had no liability for several claims, including the Valenti claims, and that there was

no admission of those claims by Newland or adjudication of those claims against Newland. Newland argues that the jury's verdict is against the weight of the evidence on damages as a result by including those claims in the purchase price. Yet, as discussed above, the Bankruptcy Court granted the Motion to Sell and approved the Whitestown Purchase Agreement and the Novation Agreement. The Whitestown Purchase Agreement included the provision for BCU to assume the Valenti claims pursuant to the Novation Agreement. We conclude that Newland has failed to establish that the trial court abused its discretion, that a flagrant injustice has occurred, or that Newland has presented a very strong case for relief from the trial court's order.

Branham argues on cross-appeal that it is entitled to post-judgment interest on its favorable jury verdict. Newland, while disputing the principal amount upon which the post-judgment interest is to be applied, concedes that Branham is entitled to post-judgment interest on the jury verdict to the extent Branham is entitled to damages. *See Brief of Cross–Appellees Newland Resources, LLC, Ecoholdings, LLC, Ecosource, LLC, and John Michael Kensill.*

Indiana Code section 24–4.6–1–101(2)(WEST, PREMISE through Public Laws approved and effective through 4/20/2009) provides that "interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at an annual rate of eight percent (8%) if there was no contract by the parties." Consequently, we remand this matter to the trial court for the calculation of the post-judgment interest due and entry of an order awarding post-judgment interest to Branham.

Branham next argues on cross-appeal that the trial court erred by instructing the jury to subtract $3,500,000.00 from the total purchase price. The trial court issued an order on October 18, 2007 wherein the trial court found by agreement of the parties that the Branham Agreement was unambiguous and should be construed by the court as a matter of law by way of jury instructions. Newland contends that Branham has waived its objections to Jury Instruction No. 5, the instruction on the calculation of the success fee, because Branham did not set out the instruction and objections thereto in the argument section of its brief.[2] Newland argues in the alternative that Jury Instruction No. 5 is proper based on the pleadings and evidence. Branham replies that it is contesting the trial court's October 18, 2007 order which by implication requires the deduction of $3,500,000.00 from the total purchase price to calculate the success fee, and not the instruction itself.

 Potential waiver notwithstanding, the trial court's October 18, 2007 order and its instruction to the jury to deduct $3,500,000.00 from the total purchase price was correct and supported by the evidence. Newland notes that Branham, in the First Amended Complaint, made the following request:

> 21. In the alternative (under The Principal Agreement), in the event of a sale of BCU, Branham was entitled to 8% of the sale price of BCU (after deducting $3,500,000.00) as a success fee.

---

**2.** Indiana Rule of Appellate Procedure 46(A)(6)(e) provides as follows:

When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto.

*Appellant's Appendix* at 62. Jury Instruction No. 5 reads as follows:

Pursuant to paragraph 5(c)(ii) of the [Branham Agreement], Branham was entitled to be paid a success fee calculated at 8% of the total purchase price of BCU in any sale thereof to a third party in excess of Three Million Five Hundred Thousand Dollars.

Sale of BCU means sale of the entity, The Boone County Utilities.

If you find that Branham has otherwise satisfied the elements to recover on it's[sic] breach of contract claim, you may conclude that Branham is entitled to compensation pursuant to paragraph 5(c)(ii) of the [Branham Agreement] to the extent that the compensation reflects the total purchase price value of the entity, The Boone County Utilities, on the date of the sale to the Town of Whitestown, July 20, 2004.

If you find that Branham has otherwise satisfied the elements to recover on it's breach of contract claim, in calculating the success fee owing pursuant to paragraph 5(c)(ii) of the [Branham Agreement] you should deduct the sum Three [M]illion Five Hundred Thousand Dollars from whatever sum you determine to reflect the total purchase price value of the entity, The Boone County Utilities, on the date of the sale to the Town of Whitestown, July 20, 2004. You should then multiply that sum times 8% to determine the amount of Branham's compensation.

*Id.* Branham asked for the success fee to be calculated upon the total purchase price less the $3,500,000.00 deduction, the trial court instructed the jury to do so, and that is what the jury did.

██ Here, Branham is asking this court to interpret the language of Paragraph 5(c)(ii) of the Branham Agreement. Instead, our task is to determine whether sufficient evidence exists in the record to support an instruction. When we do so, we look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. *See Simmons v. Erie Ins. Exchange,* 891 N.E.2d 1059 (Ind.Ct.App.2008).

In addition to the language cited above from the First Amended Complaint, Branham filed a proof of claim in the Bankruptcy Court for $136,000.00 based upon the Branham Agreement and a total purchase price of $5,200,000.00. *Appellant's Appendix* at 247. That calculation is arrived at by a deduction of $3,500,000.00 from the purchase price. Furthermore, an amended claim filed by Branham in the Bankruptcy Court shows that the claim based upon the Branham Agreement, was arrived at by deducting $3,500,000.00 from the total purchase price. Lastly, Newland correctly notes that Branham's objection to Jury Instruction No. 5 was the inclusion of the word "entity" and not the mathematical formula contained therein. The trial court did not err as the instruction was proper.

Branham argues that the trial court erred by dismissing Counts II and III of the First Amended Complaint. Count II alleged a civil conversion claim against Newland. Count III of the First Amended Complaint alleged a civil conspiracy claim against Sam Sutphin (Sutphin), White River Venture Partners, L.P. (White River), Cornelius M. Alig (Alig), Greenleaf, LLC, (Greenleaf), James B. Harmon (Harmon), Ecoholdings, LLC (Ecoholdings), John Michael Kensill (Kensill), and Ecosource, LLC (Ecosource).

On May 30, 2006, Greenleaf, Alig, Ecoholdings, Ecosource, Kensill, and Newland moved to dismiss Branham's First Amended Complaint in its entirety (the May 30 Motion). As stated above, Newland moved

to dismiss Counts II and III, while the others moved to dismiss Count III. Branham did not respond to Greenleaf and Alig's motion to dismiss. On June 21, 2006 the trial court granted Newland's motion to dismiss Counts II and III, and Ecoholdings, Ecosource, Greenleaf, Alig, and Kensill's motion to dismiss Branham's First Amended Complaint in its entirety as to them.

On June 30, 2006, White River and Sutphin moved to dismiss Branham's First Amended Complaint in its entirety (the June 30 Motion). The only count pertaining to White River and Sutphin was Count III. Branham did not respond to the motion to dismiss, but filed a Second Amended Complaint on July 10, 2006. On July 12, 2006, Newland filed a motion to strike Branham's Second Amended Complaint, and White River and Sutphin joined in Newland's motion. The trial court granted the motion to dismiss the First Amended Complaint on August 29, 2006. On December 20, 2006, the trial court granted Newland, Sutphin and White River's motion to strike and denied Branham's motion for leave to amend. Branham did not move to correct error as to the trial court's order striking Branham's Second Amended Complaint and denying Branham's request to amend its First Amended Complaint.

The issue here is whether the trial court erred by granting the motion to dismiss. Our standard of review of the decision to grant a motion to dismiss pursuant to Trial Rule 12(B)(6) is well settled. A 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Godby v. Whitehead*, 837 N.E.2d 146 (Ind.Ct.App.2005). As a result, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id.* We stand in the shoes of the trial court and must determined if the trial court erred in its application of the law. *Id.* The trial court's grant of a motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Burke v. Town of Schererville*, 739 N.E.2d 1086 (Ind.Ct.App.2000). Additionally, when a trial court grants a motion to dismiss without reciting the grounds relied upon, we presume upon review that the trial court granted the motion on all grounds in the motion. *Gorski v. DRR, Inc.*, 801 N.E.2d 642 (Ind.Ct.App.2003). Accordingly, we review the complaint and the arguments presented in the motion to dismiss.

As previously stated, Count II of the First Amended Complaint alleged civil conversion. Under Ind.Code Ann. § 34–24–3–1(WEST, PREMISE through Public Laws approved and effective through 4/20/2009) a person who proves the elements of criminal conversion by a preponderance of the evidence can recover the costs of the action, reasonable attorney's fees, and up to three times the actual damages. *French–Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156 (Ind.Ct.App. 2008). A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss. *Id.*

Criminal conversion requires proof that a person knowingly or intentionally exerted unauthorized control over property of another person. Indiana Code Ann. § 35–43–4–3. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious object to do so." Ind.Code Ann. § 35–41–2–2(a). "A person

engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b). "A person's control over property of another person is 'unauthorized' if it is exerted in a manner or to an extent other than that to which the other person has consented." Ind.Code Ann. § 35–43–4–1(b)(2).

In the May 30 Motion, Newland and others argued that Count II should be dismissed for failure to state a claim because Branham had not identified a specific fund of money which Newland had refused to deliver to Branham. *Cross–Appellant's Appendix* at 36. Newland asserted that the First Amended Complaint stated a claim for breach of contract and damages flowing from that breach. *Id.* Newland cited to *Huff v. Biomet, Inc.,* 654 N.E.2d 830 (Ind.Ct.App. 1995), *abrogated on other grounds by St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699 (Ind.2002) and to *Kopis v. Savage,* 498 N.E.2d 1266 (Ind.Ct. App.1986) to support its position. *Huff* and *Kopis* both stand for the proposition that while money may be the subject of an action for conversion, the money must be capable of being identified as a special chattel. "The money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose. The refusal to pay a debt will generally not support a conversion action." *Huff v. Biomet, Inc.,* 654 N.E.2d at 836 (internal citation omitted). Count II did not identify the money at issue as special chattel. Consequently, our review of the complaint and the argument in the motion to dismiss leads us to conclude that the trial court did not err by dismissing Count II of the First Amended Complaint.

The May 30 Motion and the June 30 Motion each alleged that Count III should be dismissed for failure to state a claim.

Count III alleged a civil conspiracy claim against Sutphin, White River, Alig, Greeleaf, Harmon, Ecoholdings, Kensill and Ecosource.

A civil conspiracy is defined as "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Huntington Mortgage Co. v. DeBrota,* 703 N.E.2d 160, 168 (Ind.Ct.App.1998). Additionally, civil conspiracy is not an independent cause of action. *American Heritage Banco, Inc. v. McNaughton,* 879 N.E.2d 1110 (Ind.Ct.App.2008).

More specifically, the First Amended Complaint alleged as follows:

[The defendants] engaged in a cooperative and concerted course of action that was intended to benefit the individual defendants financially to the detriment of BCU's value and therefore to the detriment and damage of Branham, in that these defendants conspired and cooperated in a scheme whereby potential BCU customers were threatened with the denial of BCU services and sewer and water access in order to coerce the sale of their property to one or more of the owners and/or managers of the non-BCU defendants.

*Appellant's Appendix* at 62–63. The proponents of the May 30 Motion and the June 30 Motion argued that the First Amended Complaint alleged that all of the defendants, "including all members of Newland, and all of their respective members ... and including ma[n]y persons and entities which were not even members of Newland at the time the Agreement between Branham and Newland was executed" engaged in the civil conspiracy. *Cross–Appellant's Appendix* at 40. They also noted that no agreement or meeting of the minds, any circumstantial evidence

of an agreement, specific intent by the participants to injure Branham, fraudulent statements, or the object of the conspiracy had been identified. Our review of the complaint and the arguments contained in the motions leads us to the conclusion that the trial court properly dismissed Count III of First Amended Complaint as to all the defendants.

On cross-appeal Branham also raises the issue of the trial court's order granting Harmon's motion to quash the alias summons served on Harmon during his deposition and the trial court's order granting Harmon's motion to dismiss the First Amended Complaint against him for insufficiency of service of process. Because we have concluded that the trial court correctly dismissed Counts II and III of the First Amended Complaint, we need not reach this issue.

Judgment affirmed.

BAILEY, J., and VAIDIK, J., concur.