Larry COX and Tube City, LLC,
d/b/a Olympic Mill Services,
Appellants–Defendants,

v.

Allen MATTHEWS, Appellee–Plaintiff.

No. 45A05–0803–CV–183.

Court of Appeals of Indiana.

Feb. 12, 2009.

Rehearing Denied April 7, 2009.

Bruce P. Clark, Jennifer K. Davis, Bruce P. Clark & Associates, Munster, IN, Attorneys for Appellants.

George T. Patton, Jr., Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, A. Leon Sarkisian, Kathleen E. Peek, Sarkisian Law Offices, Merrillville, IN, Attorneys for Appellee.

### OPINION

BAKER, Chief Judge.

Appellants-defendants Larry Cox and Tube City, LLC d/b/a Olympic Mill Services (collectively, "Tube City"), appeal from the trial court's judgment holding Tube City liable for negligence and ordering it to pay $4,126,529 in damages to appellee-plaintiff Allen Matthews. Specifically, Tube City argues that the trial court erred by allowing the expert testimony of Anthony Gamboa, Ph.D. In addition, Tube City maintains that the jury's verdict and allocation of damages is clearly against the weight of the evidence. Furthermore, Tube City asserts that the trial court improperly instructed the jury regarding the absence of Cox and documents relating to Cox's employment. Finally, Tube City maintains that the trial judge was improperly appointed in violation of the Indiana Trial Rules.

Matthews cross-appeals, claiming that this appeal must be dismissed because Tube City's brief was not timely filed. Finding no error, we affirm the judgment of the trial court.

### FACTS[1]

On May 10, 2004, Matthews, age 30, was working as a stocker at Beta Steel in

---

1. We heard oral argument on January 7, 2009. We would like to thank counsel for

Portage, Indiana. Cox was an employee of Tube City, which provides personnel and equipment to perform tasks that are ancillary to a steel mill's primary function. Cox was assigned to provide services to Beta Steel.

At approximately 7:00 a.m., Matthews arrived for the day shift. He worked with a forklift moving 2,000 pound bags of dololime that he hooked to a charger bucket each hour while the Tube City loader, operated by Cox, was working in the nearby slag pit. Around 9:00 a.m., Matthews picked up the third load of dololime with his forklift from the east bay and proceeded to take the bags to the scrap pit and header bucket.

When Matthews reached the bucket, he stopped the forklift, engaged the safety brake, and proceeded to the front of the forklift. Matthews was able to strap the first bag up; however, as he began to hook the second bag, he was struck by the front loader operated by Cox and was crushed into a wooden pallet, breaking it from the impact. When the front loader pulled away, Matthews fell and had no feeling in his legs.

Matthews was transported to Porter Memorial Hospital, where he was examined by the emergency room doctor, a trauma surgeon, and an orthopedic surgeon. As a result of being crushed by the front loader, Matthews suffered multiple pelvic fractures, hematomas, subcutaneous contusions, and an "open book" injury, which results when the force is so great that it causes the joints to peel apart "as if you are opening a book." Tr. p. 42.

Dr. Ron Clark, an orthopedic surgeon, examined Matthews in June, July, August, September, October, and November when a functional capacity evaluation was conducted. In December, Dr. Clark determined that Matthews had a 15% whole body impairment, and a 3% right/left lateral impairment, with restrictions of lifting 84 pounds floor to waist, 44 pounds floor to shoulders, and 34 pounds floor to overhead. Matthews was allowed to return to work with the above restrictions and no walking for more than fifteen minutes without rest.

In March 2005, Matthews returned to Dr. Clark, and an MRI showed that the right pelvis at the SI joint was permanently abnormal and arthritic. Permanent work restrictions were imposed similar to the earlier restrictions, with the addition that Matthews use a cane when climbing stairs; however, Dr. Clark did not think that there was anything more that could be done to help Matthews because of the extensive damage to the joints.

In January 2006, Matthews saw Dr. Anton Thompkins, an orthopedic spine surgeon, for back, gluteal, thigh, and groin pain that he had been experiencing for a couple of years. Dr. Thompkins testified that "there's not a great treatment for S.I. joint injuries that are chronic in nature." Id. at 116.

In May 2007, Matthews was evaluated by Dr. Darryl L. Fortson, who concluded that Matthews had a 24% whole person impairment. Dr. Fortson noted that Matthews was "blessed by God to be alive. He was crushed by an accelerating vehicle whose weight is measured in tons and not surprisingly, he suffered a major fracture in his pelvic rami." Plaintiff's Ex. 18 p. 3.

On January 24, 2005, Matthews filed a complaint against Tube City and its employee Cox, alleging that Cox, while acting within his scope of employment, negligently operated an industrial vehicle that collided with Matthews. Matthews

their able presentations.

maintained that as a direct and proximate result of Cox's negligence, Matthews sustained serious and permanent bodily injuries. Matthews sought past and future medical expenses, past and future pain and suffering, and past and future lost wages.

After a lengthy discovery process, a jury trial was set for December 4, 2007. On December 2, Tube City's counsel discovered that Matthews's counsel had represented the trial judge's spouse in an unrelated matter. On December 3, counsel for both sides joined in a conference call to the court. The trial judge informed counsel that he had already spoken with the chief judge regarding the issue and that a new judge would be ready to preside over the case the next day. Counsel subsequently received an order dated December 3, 2007, advising of Judge Calvin D. Hawkins's appointment.

At the jury trial, which commenced on December 4, 2007, Dr. Gamboa, a vocational economist, testified that the present value of Matthews's future lost earning capacity was between $656,412 and $821,056. In addition, Dr. Gamboa concluded that Matthews was occupationally disabled and would lose seven years of his working life.

On December 7, 2007, the jury returned a verdict in favor of Matthews. Specifically, the jury found that Matthews was 5.83% at fault, Tube City was 94.17% at fault, and Beta Steel was 0% at fault. The jury assessed damages in the amount of $4,382,000. After the total amount was reduced by Matthew's percentage of fault, Matthews was awarded $4,126,529.

On January 7, 2008, Tube City filed a motion to correct error, alleging that the testimony of Dr. Gamboa was improperly admitted, that the verdict was excessive and not supported by the evidence, and that the procedure for the appointment of Judge Hawkins was improper. On February 28, 2008, after hearing oral argument, the trial court denied the motion to correct error. Tube City now appeals.

## DISCUSSION AND DECISION

### I. Cross–Appeal: Belated Brief

■■■ Before proceeding to the merits of Tube City's claims, we first address Matthews's cross-appeal. Matthews argues that this appeal should be dismissed because Tube City filed its brief four days late. Tube City responds that we should affirm the decision of the motions panel, which granted its motion to file a belated brief.[2] In support of this contention, Tube City maintains that at most, its brief was only one business day late because the trial court did not mail its notice of completion of the transcript until June 11, 2008, and therefore, the brief was not due until July 11, 2008. Because the brief was filed on Monday, July 14, Tube City asserts that its brief was only one business day late. Moreover, Tube City maintains that counsel consulted the Indiana Rules of Appellate Procedure and, while counsel's interpretation of these rules may have been faulty, it did not constitute a flagrant violation of the appellate rules of procedure.

■■■ Indiana Appellate Rule 45(D) provides that "[t]he appellant's failure to file a timely appellant's brief may subject the appeal to summary dismissal." Dismissal for the late filing of an appellant's

---

**2.** On August 26, 2008, the motions panel granted Tube City's motion to file a belated brief. It is well settled that this court has the inherent authority to reconsider any order of the motions panel while the appeal remains

in fieri. Cincinnati Ins. Co. v. Young, 852 N.E.2d 8, 12 (Ind.Ct.App.2006). However, in the absence of clear authority suggesting that the motions panel erred as a matter of law, we will not overrule such orders. Id.

brief is within the discretion of the court rather than mandatory. *Howell v. State,* 684 N.E.2d 576, 577 (Ind.Ct.App.1997). Because the court prefers to decide cases upon their merits, when violations are comparatively minor, are not a flagrant violation of the appellate rules, and there has not been a failure to make a good faith effort to substantially comply with those rules, the appeal will be allowed. *Haimbaugh Landscaping, Inc. v. Jegen,* 653 N.E.2d 95, 99 (Ind.Ct.App.1995).

Here, Tube City contends that it made a good faith effort to substantially comply with the rules because it was only one business day late filing its brief. As noted above, this conclusion is based on Tube City's assertion that the trial court clerk did not issue its notice until June 11, 2008, which would have made its brief due on Friday, July 11, 2008. Tube City submitted its brief on Monday, July 14, thus making the brief only one business day late. Tube City also points out that after consulting Appellate Rule 25(C), counsel concluded that there were three extra days in which to file the brief. Moreover, counsel consulted Appellate Rule 45(B)(1)(b), which did not specifically exclude the three-day mail rule allowed by Rule 25(C), as do other rules, including Appellate Rules 54(B) and 57(C).

As we will explain later, we agree with Tube City's assertion that it made a good faith effort to substantially comply with the rules and that its violation was not flagrant; however, we disagree with several of the premises which Tube City uses to reach this conclusion. First, we cannot agree with Tube City's argument that the trial court clerk did not issue its notice of completion of the transcript until June 11, 2008, and that, consequently, its brief was not due until July 11, 2008. Appellate Rule 10(D) mandates that "the trial court clerk or Administrative Agency shall issue and file a Notice of Completion of Transcript," and Appellate Rule 45(B)(1) provides in relevant part that "[t]he appellant's brief shall be filed no later than thirty (30) days after . . . the date the trial court clerk or Administrative Agency issues its notice of completion of the Transcript."

Here, the record indicates that the notice of completion of transcript was filed with this court on June 10, 2008, and stated that "the Transcript in this case has been completed on this 10th day of June, 2008." Appellants' App. p. 201. Thus, June 10, 2008, was the date on which the trial court clerk "issued its notice of completion of the Transcript" for purposes of Appellate Rules 10(D) and 45(B)(1).

Nevertheless, Tube City contends that the trial court clerk's online docket proves that the clerk did not issue the notice of completion of the transcript until June 11, 2008. Specifically, the trial court clerk's online docket read:

'06–11–2008 Issue: 06/11/2008 Service: Notice of Completion of Clerk's Portion/Transcript Method: Serv. Certified Gary–Laser Form Cost Per: $0.00 Clark (Attorney), Pruce P. Burce (sic) P. Clark & Associates 419 Ridge Road MUNSTER, IN 46321 Trackin (sic) No: Z000002298.'

Appellant's Reply Br. p. 6. Moreover, Tube City maintains that the postmark on the clerk's envelope containing the notice of completion of the transcript reveals that it was mailed on June 11, 2008.

As for the trial court clerk's online docket entry, it appears to be a record of when and how the parties were served with a copy of the notice of completion of the transcript. This is consistent with the postmark on the clerk's envelope containing the notice of completion of the transcript. However, the language used in Appellate Rule 45(B)(1) is "issues," not

"mails" or "serves." Moreover, Appellate Rule 10(D) mandates that the trial court clerk issue and file a notice of completion of the transcript and "serve a copy on the parties within five (5) days after the court reporter files the Transcript." Thus, the trial court clerk does not "issue" to the parties the notice of completion of the transcript, but rather serves them with a copy, and the correct date for calculating when Tube City's brief was due was June 10, 2008.

Next, Tube City argues that its brief was only one business day late and asserts that we have permitted appeals to proceed when a brief has been filed only one day late. First, because Tube City's brief was due on Thursday, July 10, 2008, and was not filed until Monday, July 14, it was two business days late. Second, for the purposes of Appellate Rule 45(B)(1), due dates are primarily calculated by calendar days, and not business days. Specifically, Appellate Rule 25(B) addresses the issue of counting days for purposes of computing any period of time allowed by the Rules: "[i]f the last day is a non-business day, the period runs until the end of the next business day. When the time allowed is less than seven (7) days, all non-business days shall be excluded from the computation." Thus, non-business days are included in any computation of time under the rules unless the non-business day is the last day of the applicable time period or the amount of allowable time is less than seven days. Thus, we must conclude that Tube City's brief was four days late.

Finally, we note that Appellate Rule 25(C) did not provide Tube City with any additional time to file its brief. Rule 25(C) permits three additional days when "a party serves a document by mail or third-party commercial carrier." Although the trial court clerk served a copy of the notice of completion of the transcript to the par-

ties by mail, the trial court clerk is not "a party" and therefore Rule 25(C) does not apply to these circumstances. Also, Rule 25(C) only applies to "response" or "reply" briefs—this does not qualify.

Notwithstanding the above analysis, the record reflects that Tube City made a good faith effort to substantially comply with the rules and that any violation was not flagrant. Indeed, counsel consulted the Appellate Rules, and although counsel reached an erroneous conclusion regarding when the notice of completion of the transcript had been issued and whether Tube City had three additional days in which to file its brief, counsel did not flagrantly disregard the Appellate Rules. Moreover, on July 17, 2008, counsel received notice from the clerk's office that Tube City's brief had been untimely filed. That same day, counsel filed a motion for leave to file a belated brief, which, as noted above, our motions panel granted. Thus, it is clear that Tube City attempted to remedy the situation in a timely manner.

Finally, Matthews has failed to show that the motions panel erred as a matter of law in granting the motion to file a belated brief. In arguing that this court should disregard the findings of the motions panel, Matthews cites *Miller v. Hague Insurance Agency, Inc.*, 871 N.E.2d 406, 407–08 (Ind.Ct.App.2007), *Citizens Industrial Group v. Heartland Gas Pipeline, LLC*, 856 N.E.2d 734, 736–37 (Ind.Ct.App.2006), and *In re Sale of Real Property with Delinquent Taxes or Special Assessments*, 822 N.E.2d 1063, 1067 (Ind.Ct.App.2005), in which this court reversed the decision of the motions panel. However, these cases are distinguishable from the present case.

In *Miller*, this court reconsidered the findings of the motions panel and dismissed an appeal in which the brief was filed thirty-eight days late. 871 N.E.2d at 407–08. By contrast, Tube City was only

four days late, which is closer to other cases in which this court did not dismiss an appeal because the brief was filed one day late. *See Howell v. State,* 684 N.E.2d 576, 577 (Ind.Ct.App.1997); *Haimbaugh,* 653 N.E.2d at 99. Furthermore, *Citizens* involved an administrative appeal filed three months late, 856 N.E.2d at 737, and *In re Sale* involved a finding that the appeal was filed pursuant to an incorrect trial rule, 822 N.E.2d at 1067.

In sum, we conclude that Tube City did not flagrantly disregard the appellate rules. Moreover, Matthews has failed to show that the motions panel erred as a matter of law in permitting Tube City to file a belated brief. Therefore, we decline to dismiss the appeal and will proceed to address the issues raised.[3]

*II. Admission of Expert Testimony*

Proceeding to the merits of Tube City's claims, it first argues that the trial court erred when it admitted the expert testimony of Dr. Gamboa. Specifically, Tube City maintains that Dr. Gamboa's testimony regarding Matthews's decreased work life did not relate to this specific case and lacked a foundation, and was therefore unreliable under Indiana Evidence Rule 702(b).

 Tube City is appealing from a denial of a motion to correct error. When reviewing a trial court's denial of a motion to correct error, we will reverse only when there has been an abuse of discretion. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 273 (Ind.Ct.App.2001). An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be

drawn therefrom. *Id.* The trial court's decision on a motion to correct error comes to us cloaked with a presumption of correctness and the appellant has the burden of showing an abuse of discretion. *Petersen v. Burton,* 871 N.E.2d 1025, 1028 (Ind.Ct.App.2007).

 Decisions regarding the admissibility of expert testimony lie within the discretion of the trial court and will be reversed only for an abuse of discretion. *Lumbermens Mut. Cas. Co. v. Combs,* 873 N.E.2d 692, 716 (Ind.Ct.App.2007). Furthermore, even if a trial court's ruling is an abuse of discretion, this court will not reverse unless the error is prejudicial. *Decker v. Zengler,* 883 N.E.2d 839, 845 (Ind.Ct.App.2008). The erroneous admission of evidence is prejudicial when it is against substantial justice. *Lee v. Hamilton,* 841 N.E.2d 223, 227 (Ind.Ct.App. 2006).

 During Dr. Gamboa's testimony at trial, Tube City objected, stating that "[t]here has been no medical testimony from any of the doctors ... that have [sic] indicated there is any shortage of work life in the plaintiff's work expectancy. So, therefore, any opinions driven off of that would be truly speculative and mislead the jury." Tr. p. 392–93. Tube City maintains that because there was "no competent medical testimony admitted establishing that Matthews' [sic] had a decreased work-life expectancy," Dr. Gamboa's testimony was nothing more than speculation that confused the jury. Appellant's Br. p. 17.

Here, Dr. Gamboa testified that when conducting a vocational economic assessment, he examines medical reports and

---

**3.** We emphasize that our decision to reach the merits in this case should not be construed as an invitation to disregard the Appellate Rules. Indeed, this court has the discre- tion to dismiss appeals for failure to follow the rules. *Haimbaugh,* 653 N.E.2d at 99 n. 10.

information because it is the medical doctor who assigns a percentage of physical functional impairment. Tr. p. 388. Specifically, Dr. Gamboa stated that he relied upon the restrictions given to Matthews by Dr. Fortson. *Id.* at 391. Because Dr. Fortson had previously testified, we cannot say that there was "no competent medical testimony" upon which Dr. Gamboa based his opinion, appellant's br. p. 17, and the trial court did not abuse its discretion by allowing Dr. Gamboa to testify.

Nevertheless, Tube City also claims that Dr. Gamboa's testimony should not have been admitted under Indiana Evidence Rule 702(b). However, Tube City's objection was limited and not based upon Rule 702(b) pertaining to expert testimony. Therefore, to the extent that Tube City argues that Dr. Gamboa's testimony should not have been admitted under Rule 702(b), the argument is waived. *See Verma v. D.T. Carpentry, LLC,* 805 N.E.2d 430, 433 (Ind.Ct.App.2004) (holding that to the extent an argument exceeded the scope of the objection at trial, the appellant had waived the argument on appeal).

■ Waiver notwithstanding, Dr. Gamboa's testimony was not improperly admitted under Rule 702(b), which provides that "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." To determine reliability, "the trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth,* 877 N.E.2d 475, 484 (Ind.Ct.App.2007).

Here, the trial court concluded that Dr. Gamboa's testimony was admissible. Specifically, when Tube City objected to Dr.

Gamboa's testimony, Matthews explained that:

> [Dr. Gamboa] is translating what the doctors have said . . . and putting it into a work life and economic loss based on a reduced work life and, in addition, based on reduced earning capacity as represented by his physical condition. Which, as a vocational economist, he's allowed to consider and to evaluate, because that's what vocational counselors do.

Tr. p. 394. The trial court determined that Dr. Gamboa was "allowed to do that," *id.,* if Dr. Gamboa based his findings on evidence that had already been admitted. *Id.* at 395.

As stated earlier, Dr. Gamboa based his opinion on the medical findings of Dr. Fortson, who had previously testified. Therefore, we cannot conclude that the trial court abused its discretion in determining that the findings of a medical doctor were a sufficiently reliable basis for a specialist's opinion under Rule 702(b). *Cf. Kempf Contracting & Design, Inc. v. Holland–Tucker,* 892 N.E.2d 672, 678 (Ind.Ct.App.2008) (holding that the trial court had erred by admitting the testimony of a vocational economic analyst and reasoning that the plaintiff had "failed to present *any* evidence to establish the scientific reliability of [the specialist's] methodology") (emphasis added).

Moreover, Dr. Charles Linke, an economist and Tube City's expert, used the same methodology as Dr. Gamboa, including the same percentage for fringe benefits, the same interest rate growth rate, and the same data from the Current Population Survey that is gathered by the U.S. Bureau of the Census. Therefore, Tube City cannot now complain that Dr. Gamboa's methodology is unreliable.

### III. Excessive Jury Verdict

█ Tube City argues that the jury verdict was excessive and clearly against the weight of the evidence. Specifically, Tube City maintains that the evidence at trial establishes that Matthews only incurred $28,000 in damages consisting of medical bills. Furthermore, Tube City asserts that the allocation of fault among Matthews and Tube City was against the weight of the evidence and that Beta Steel should have been assigned some percentage of fault.

█ When reviewing a damage award, we consider only the evidence that supports the award along with the reasonable inferences therefrom. *Ritter v. Stanton*, 745 N.E.2d 828, 843 (Ind.Ct.App. 2001). A damage award will be upheld if it falls within the bounds of the evidence. *City of Carmel v. Leeper Elec. Servs., Inc.*, 805 N.E.2d 389, 393 (Ind.Ct.App.2004). The jury has broad discretion in determining an award of damages, and when the evidence is conflicting, the jury is in the best position to assess the damages. *Ritter*, 745 N.E.2d at 843–44. In other words, if the award is within the scope of the evidence and can be explained on any reasonable ground, the award will not be deemed the result of improper considerations. *Id.* at 844. However, if "the damage award is so outrageous as to indicate the jury was motivated by passion, prejudice, partiality, or consideration of improper evidence, we will find the award excessive." *Id.* Finally, the jury's damage award will not be deemed the result of improper considerations if the size of the award can be explained on any reasonable ground. *Id.* at 857.

In this case, Matthews presented evidence in support of his claim for damages. Specifically, Matthews was crushed by a loader weighing 66,000 pounds and testified, "I honestly thought I was going to die." Tr. p. 316. Dr. Clark, the orthopedic surgeon, testified that Matthews had an "open book" injury which results "[w]hen you have a significant force, it can actually peel the joints apart as if you're opening a book." *Id.* at 42. In addition, Dr. Clark stated that "[d]amaged joints have no ability to repair themselves." *Id.* at 58.

Dr. Thompkins, the orthopedic spine surgeon, testified to Matthews's "devastating-type injury" that "takes a significant degree of force on a young guy to do that." *Id.* at 109. Dr. Thompkins discussed the "chronic wear and breakdown of that S.I. joint," and his belief that "there's not a great treatment for S.I. joint injuries that are chronic in nature." *Id.* at 114–16. Moreover, Dr. Fortson determined that Matthews had 24% whole person impairment. Plaintiff's Ex. 18 p. 7.

Matthews's wife, Lee Ann, testified that he was always down on himself and that "you can see that he's suffering." Tr. p. 91–92. Matthews testified that the injury changed who he was, explaining that "I can't play with my daughter the way I want to; no running, anything like that." *Id.* at 322.

Finally, during closing argument, Matthews's counsel suggested to the jury a figure of $6,727,200.90. This amount included $2 million for physical injuries, $1,014 million for erectile dysfunction, $1.75 million for disability, $1.25 million for pain and suffering, $656,412 in lost earnings, and $56,788.90 in worker's compensation benefits that had to be repaid. Tr. p. 575–80. Tube City proposed that the jury assess damages in the amount of $541,374. This amount included $56,788 in worker's compensation benefits that had to be repaid, $250,000 for pain and suffering, $50,000 for Matthews's erectile dysfunction, and $184,566 for future lost wages if Matthews has to retire five years early.

*Id.* at 601–02. The jury deliberated and assessed damages in the amount of $4,382,000, which is within the range put forth by both parties.[4] Although the figure is much closer to the one proposed by Matthews, Tube City's proposed figure did not include damages for physical injuries and disability. In light of all the evidence, we cannot say that the damages assessed against Tube City were clearly against the weight of the evidence.

Tube City also maintains that the percentages of fault assessed against Matthews and Tube City, and the jury's failure to assess any percentage of fault against Beta Steel, were clearly against the weight of the evidence. As stated earlier, the jury assessed 94.17% of fault against Tube City and 5.83% against Matthews. Our Supreme Court has held that "a jury's assessment of proportional fault includes consideration of the relative degree of causation attributable among responsible actors. The process by which a jury analyzes the evidence, reconciles the views of its members, and reaches a unanimous decision is inherently subjective and is entitled to maximum deference." *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1056 (Ind.2003).

During its opening statement, Tube City conceded contact between Cox, its employee, and Matthews. Tr. p. 15. Moreover, the evidence indicated that the backup alarm on the front loader that Cox was operating was not functioning properly. In deferring to the jury's determination,

we cannot say that the jury's allocation of fault was clearly against the weight of the evidence.

### IV. Jury Instruction

Tube City argues that the trial court abused its discretion when it gave an instruction regarding the absence of Cox and certain documents. Specifically, Tube City asserts that the challenged jury instruction was not supported by the evidence and misled the jury. The Final Jury Instruction No. 3 was a modified version of Indiana Pattern Jury Instruction, Civil 3.11 [5] and read:

> When a party fails, without explanation, to testify concerning facts peculiarly within that party's knowledge or produce documents particularly within a party's control, you may infer that had the testimony been given and had the documents been produced, the testimony and documents would have been unfavorable to that party's case.

Appellant's App. p. 12, 14.

In reviewing a trial court's decision to give a tendered instruction, an appellate court must decide whether the instruction "(1) correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions." *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind. 2002). The trial court has the discretion to instruct the jury, and it will be reversed on the last two issues only when the instruction amounts to an abuse of discretion. *Id.*

---

4. We do not intend to imply that a jury's assessment of damages will necessarily be reasonable as long as the amount does not go beyond the amount put forth by the plaintiff and is kept between within the range set forth by both parties. To do so would encourage plaintiff's counsel to allege more damages. Instead, we hold that in this case, in light of the evidence in the record and the range set forth by the parties, we cannot say that the

jury's assessment of damages is against the weight of the evidence.

5. Indiana Pattern Jury Instruction, Civil 3.11 relates only to the testimony of a party or the failure of a party to produce a witness. It does not relate to the failure of a party to produce documents as the modified version at issue in this case.

Here, Cox was no longer an employee of Tube City at the time Matthews requested Cox's appearance at two depositions and at trial. Because he was no longer an employee, Tube City argues that it was not responsible for his failure to attend the depositions or trial because Tube City had no control over him. Therefore, Tube City asserts that the jury instruction is not supported by the evidence.

The jury instruction does not suggest that Tube City had sufficient control over Cox to produce him as a witness. Instead, the doctrine of respondeat superior applies to the relationship between Tube City and Cox. *See Barnett v. Clark,* 889 N.E.2d 281, 283 (Ind.2008) (recognizing the general rule that an employer will be held vicariously liable under the doctrine of respondeat superior when an employee inflicts harm while acting "within the scope of employment"). Moreover, both Cox and Tube City were represented by the same counsel at trial, and Cox's name appeared on the verdict form. Therefore, because Cox was Tube City's employee and acting within the scope of his employment at the time of the incident, the negative inference that applied to Cox for his failure to appear and testify at two depositions and the trial also applied to Tube City, and the trial court did not abuse its discretion by giving this instruction.[6]

### V. Change of Judge

Finally, Tube City argues that the procedure used for changing the trial judge who would preside over the trial was improper, and, therefore, the trial court lacked subject matter jurisdiction over the case. However, as the record indicates and as conceded at oral argument, Tube City never filed a motion or application for a change of judge or venue in the trial court. When a party seeks a change of judge, Indiana Trial Rule 76(B) provides that "such change shall be granted upon the *filing of an unverified application or motion.*" (emphasis added). Therefore, Tube City has waived the issue.

The judgment of the trial court is affirmed.

DARDEN, J., and BARNES, J., concur.

---

**6.** Because Tube City's objection at trial was limited to Cox's failure to testify, its argument pertaining to the absence of documents is waived on appeal. *See Patton v. State,* 837 N.E.2d 576, 579 (Ind.Ct.App.2005) (holding that "[a party] may not argue one ground for objection at trial and then raise new grounds on appeal").