**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 26 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. HOUDEK**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|                          |   |                       |
|--------------------------|---|-----------------------|
| T.B.,                    | ) |                       |
|                          | ) |                       |
| Appellant-Defendant,     | ) |                       |
|                          | ) |                       |
| vs.                      | ) | No. 49A02-1301-JV-113 |
|                          | ) |                       |
| STATE OF INDIANA,        | ) |                       |
|                          | ) |                       |
| Appellee-Plaintiff.      | ) |                       |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary Chavers, Magistrate
Cause No. 49D09-1210-JD-2680

**August 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

T.B. was adjudicated a delinquent child for committing two counts of what would constitute class B felony robbery if committed by an adult. T.B. now appeals, and the State cross-appeals raising the following issue:

   1. Should T.B.'s appeal be dismissed because his brief was filed thirteen days late?

T.B. raises the following three issues:

   2. Did the State present sufficient evidence to support his delinquency adjudications?

   3. Did the juvenile court abuse its discretion by committing him to the Indiana Department of Correction (DOC)?

   4. Did the entry of true findings on both of the robbery allegations constitute double jeopardy?

   We affirm in part, reverse in part, and remand with instructions.

   On the evening of September 28, 2012, Ben Shaver was returning home from a basketball game. As he walked toward his home, he spoke to his girlfriend on his cell phone. When Shaver was nearly home, he passed two young men who commented about his phone. The young men then accosted Shaver, with the taller one standing in front of him and the shorter one, later identified as fifteen-year-old T.B., standing behind him. The taller man brandished what appeared to be a pistol and demanded Shaver's phone. The taller man then struck Shaver in the jaw with the gun and took the phone when it fell from Shaver's grasp. Both young men then ran away laughing.

   Shaver called the police and provided a description of the robbers. Approximately one hour later, Shaver was on the back stairs of his home when he saw the same pair of

young men walking down the street. The taller man had changed his clothes and was lifting his shirt to display the gun. Shaver again called the police, and an officer arrived and took his statement. Using Shaver's description of the robbers, police were able to locate T.B. and the other robber. While T.B. was being apprehended, a BB gun resembling a nine millimeter handgun was located on the ground approximately five feet away from T.B. Additionally, Shaver's cell phone was found in the taller man's pocket.

As a result of these events, the State filed a petition alleging that T.B. was a delinquent child for committing two counts of what would be class B felony robbery if committed by an adult. The first count alleged that T.B. robbed Shaver while armed with a deadly weapon, and the second alleged that the robbery resulted in bodily injury to Shaver. The juvenile court approved the filing of the delinquency petition on October 2, 2012, and a fact-finding hearing was held on December 12, 2012. At the conclusion of the hearing, the juvenile court entered true findings on both allegations. A dispositional hearing was held on January 2, 2013, and the juvenile court committed T.B. to the DOC until his twenty-first birthday unless earlier released by the DOC, with a recommendation that T.B. serve one year. T.B. now appeals.

1.

Before reaching the merits of T.B.'s appeal, we address the threshold issue raised by the State on cross-appeal. The State argues that T.B.'s belated filing of his appellant's brief warrants dismissal of his appeal. T.B.'s brief was filed on June 6, 2013, thirteen days past the May 24, 2013 deadline. When T.B.'s counsel became aware of the error, she filed a

motion to allow belated filing of the brief, which this court granted on July 26, 2013. This court has the inherent authority to reconsider any order of the motions panel while an appeal remains *in fieri*, but in the absence of clear authority suggesting that the motions panel erred as a matter of law, we will not overrule such orders. *Cox v. Matthews*, 901 N.E.2d 14 (Ind. Ct. App. 2009).

Ind. Appellate Rule 45(D) provides that "the appellant's failure to file a timely appellant's brief may subject the appeal to summary dismissal." This court has noted that "[d]ismissal for the late filing of an appellant's brief is within the discretion of the court rather than mandatory." *Cox v. Matthews*, 901 N.E.2d at 18-19. Moreover, "when violations are comparatively minor, are not a flagrant violation of the appellate rules, and there has not been a failure to make a good faith effort to substantially comply with those rules, the appeal will be allowed." *Id.* at 19.

In the motion to allow belated filing of the appellant's brief, counsel provided a detailed explanation of the reasons for the delayed filing, which we need not recite in detail here. It is sufficient for our purposes to note that the delay was caused by a series of oversights and missteps on the part of T.B.'s appellate counsel. There is no indication of bad faith of any kind, nor do we deem counsel's violation of the appellate rules flagrant. Moreover, the thirteen-day delay, while not insignificant, has not prejudiced the State in any way. In light of our preference for resolving appeals on their merits, we decline to exercise our discretion to dismiss T.B.'s appeal.

2.

T.B. argues that the State presented insufficient evidence to support his delinquency adjudications. When we review the sufficiency of the evidence to support a delinquency adjudication, we consider only the probative evidence and reasonable inferences supporting the adjudication. *D.W. v. State*, 903 N.E.2d 966 (Ind. Ct. App. 2009), *trans. denied*. We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the juvenile court's ruling. *R.H. v. State*, 916 N.E.2d 260 (Ind. Ct. App. 2009) (citing *Drane v. State*, 867 N.E.2d 144 (Ind. 2007)), *trans. denied*. We will affirm the adjudication unless no reasonable fact-finder could find the elements of the offense proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the adjudication. *Id.*

In order to support a true finding on the first allegation contained in the delinquency petition, the State was required to prove that T.B. knowingly or intentionally took the cell phone from Shaver's presence by using or threatening the use of force, and while armed with a deadly weapon. Ind. Code Ann. § 35-42-5-1 (West, Westlaw current with all 2013 legislation). To support a true finding on the second allegation, the State was required to prove that T.B. knowingly or intentionally took the cell phone from Shaver's presence by using or threatening the use of force, and the robbery resulted in bodily injury to Shaver. *See id.* T.B. does not dispute that the evidence was sufficient to prove that robbery occurred; rather, he argues that the State presented insufficient evidence to prove his identity as one of

5

the perpetrators. Specifically, he claims that Shaver's identification of T.B. as one of the robbers was too equivocal to constitute proof beyond a reasonable doubt and that the physical evidence, i.e., the BB gun and the cell phone, were not found in T.B.'s possession.

T.B.'s argument is merely a request to reweigh the evidence and judge the credibility of a witness. Shaver testified that the shorter robber had braided hair and acne and wore dark clothes and a hat. Less than an hour after the robbery, Shaver saw the robbers again, and although the taller man had changed clothes, T.B. had not. When Shaver was brought to the scene of T.B.'s arrest, Shaver recognized T.B. as the shorter robber. During the fact-finding hearing, Shaver stated that pictures taken of T.B. on the night of the robbery looked like the shorter robber. Moreover, Shaver identified T.B. in the courtroom, noting that although T.B.'s hairstyle had changed, he recognized a mark on T.B.'s forehead. Moreover, Shaver's identification testimony is bolstered by other evidence. Specifically, shortly after the robbery, T.B. was found in the company of another man who Shaver identified as the taller robber, and the man had Shaver's cell phone in his possession. Additionally, a BB gun Shaver identified as the gun used during the robbery was found approximately five feet away from T.B. when he was apprehended. This evidence was more than sufficient to support true findings for the delinquent acts alleged.

3.

Next, T.B. argues that the juvenile court abused its discretion by committing T.B. to the DOC instead of a community-based treatment and rehabilitation program. The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the

6

discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26 (Ind. Ct. App. 2008). Accordingly, we will reverse only where the juvenile court has abused that discretion. *Id.* "An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom." *Id.* at 28. Thus, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles, subject to the following statutory considerations:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
>     (A) in the least restrictive (most family like) and most appropriate setting available; and
>     (B) close to the parents' home, consistent with the best interest and special needs of the child;
> (2) least interferes with family autonomy;
> (3) is least disruptive of family life;
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code Ann. § 31-37-18-6 (West, Westlaw current with all 2013 legislation); *J.S. v. State*, 881 N.E.2d 26. While the statute requires the juvenile court to select the least restrictive placement in most circumstances, it also allows for a more restrictive placement where appropriate. *J.S. v. State*, 881 N.E.2d 26. That is, the statute requires placement in the least restrictive setting only where "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *J.S.*

7

*v. State*, 881 N.E.2d at 29.

T.B. argues that the juvenile court abused its discretion by ordering him committed to the DOC when the probation department recommended community-based services. The existence of a less restrictive alternative placement, however, does not mean the juvenile court is required to order that placement. *J.S. v. State*, 881 N.E.2d 26. In this case, fifteen-year-old T.B. was adjudicated delinquent for robbery, an undeniably serious offense. Moreover, T.B. had previously been adjudicated a delinquent child for three separate incidents. Specifically, T.B. was adjudicated delinquent for what would be class D felony battery, class A misdemeanor dangerous possession of a firearm, and class D felony theft if committed by an adult. All of these adjudications occurred in the same year as the robbery adjudication in this case—indeed, T.B. was adjudicated for theft less than two months before committing the robbery at issue here. The nature of the offenses and their quick succession demonstrates an ongoing pattern of criminal activity, escalating in severity. Additionally, numerous delinquency allegations against T.B. have been dismissed in the past, and T.B. was on a suspended commitment to the DOC at the time of the robbery at issue here. We note further that T.B. was reprimanded for negative behavior on three separate occasions while in the detention center and that he has tested positive for drugs on four separate occasions, including at least one positive test for opiates.

Nevertheless, T.B. argues that commitment to the DOC was an abuse of discretion because he has not previously been given an opportunity to participate in and complete intensive community-based treatment. What T.B. fails to note, however, is that it was his

8

own behavior that prevented him from completing community-based services. T.B. was participating in home-based therapy until he was arrested for the instant offense. Moreover, the evidence presented at T.B.'s dispositional hearing supports a conclusion that community-based intervention would not be in his best interests. Although T.B. denied any gang involvement at the time of the pre-dispositional report in this case, T.B. admitted in prior reports to knowing and being friends with gang members, and the Indianapolis Metropolitan Police Department Gang Task Force Unit has identified T.B. as a member of the "Drop Em Squad" gang. *Appellant's Appendix* at 66. While at the probation department's detention center, T.B. drew gang symbols and graffiti on a desk. T.B.'s older sister, who is his legal guardian, indicated that there are several gangs in the area where they live and that she does not like T.B.'s friends and associates. T.B.'s older brother testified that T.B. faces peer pressure from his friends.

In light of T.B.'s pattern of increasingly serious and violent offenses, as well as the evidence indicating that T.B. faces a number of negative influences in the community, the juvenile court was within its discretion to conclude that a less restrictive placement was not consistent with the safety of the community or T.B.'s best interests. While we are sensitive to T.B.'s history of familial instability and abuse, we must also respect the broad discretion afforded juvenile courts in matters such as this. Under the facts and circumstances of this case, we cannot conclude that the trial court abused its discretion in committing T.B. to the DOC.

4.

Finally, T.B. argues that the entry of true findings on both delinquency allegations violates double jeopardy protections. The State concedes the error. *See Walker v. State*, 932 N.E.2d 733 (Ind. Ct. App. 2010) (noting that the continuing crime doctrine, which is a category of Indiana's constitutional prohibition against double jeopardy, prohibits convicting a defendant multiple times for the same continuous offense). Here, the State leveled two separate delinquency allegations against T.B. based on two separate theories of the same robbery. Specifically, the first count was elevated to what would be a class B felony based on the use of a deadly weapon, and the second count was elevated to what would be a class B felony based on bodily injury to Shavers. There is no dispute, however, that both allegations are premised on a single robbery with a single victim. Accordingly, the entry of true findings on both allegations violates the continuing crime doctrine. We therefore remand to the juvenile court with instructions to vacate one of the two true findings for robbery.[1]

Judgment affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and VAIDIK, J., concur.

---

[1] Despite the juvenile court's entry of true findings on both robbery allegations in the delinquency petition, it is clear to us that the court understood and treated both findings as a single delinquent act, and the entry of two true findings was merely a technical oversight. Thus, we can say with confidence that the court's error in this regard did not affect its ultimate dispositional order, and T.B. does not argue otherwise.