# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 19 2015, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Angela Field Trapp
Trapp Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

In Re: the Marriage of:

Shawn Lucas,

*Appellant,*

v.

Ashley Lucas,

*Appellee.*

March 19, 2015

Court of Appeals Cause No.
70A01-1408-DR-332

Appeal from the Rush Circuit Court
Cause No. 70C01-1105-DR-230

The Honorable David E. Northam,
Judge

**Barnes, Judge.**

# Case Summary

Shawn Lucas ("Father") appeals the trial court's modification of custody in favor of Ashley Lucas ("Mother") and denial of Father's motion to correct error. We affirm.

# Issues

Father raises several issues, which we consolidate and restate as:

I.      whether the trial court abused its discretion by modifying legal and physical custody;

II.     whether the trial court abused its discretion by suspending Father's right of first refusal; and

III.    whether the trial court abused its discretion regarding the parenting time awarded to Father.

Mother argues that Father's appeal should be dismissed as untimely.

# Facts

Father and Mother were married and had one child, W.L, who was born in February 2010. In May 2011, a petition for dissolution of marriage was filed, and the marriage was dissolved in October 2011. At that time, the parties agreed to joint legal and physical custody of W.L. The parties agreed that each parent would have parenting time with W.L. "every other day and night." Appellant's App. p. 14. The parties also agreed that "when the minor child attends pre-school, the parties agree that there shall be a hearing with regards to custody, parenting visitation, and support at that time." *Id.* at 15. Both Mother

and Father lived in Rushville and worked nights. The parties did not follow the dissolution decree's every-other-day parenting time schedule because of their unusual work schedules.

In May 2012, Father moved from Rushville to Indianapolis. The parties attempted to maintain their parenting time arrangement despite the forty-five minute drive between Rushville and Indianapolis. However, the arrangement became contentious. In January 2013, Mother filed a petition to modify custody and child support. Mother alleged that Father had moved, that Father's work schedule had changed, and that W.L. was in developmental and speech therapy. According to Mother, a modification of custody was in W.L.'s best interest, and the current joint legal and physical custody arrangement was no longer practical. Mother also filed a petition for contempt, alleging that Father had failed to file a Notice of Intent to Relocate prior to moving to Indianapolis and that Father had failed to pay his portion of uninsured healthcare costs and childcare costs.

In March 2013, Father filed a response to Mother's petition for contempt, a petition for contempt against Mother, and a request for modification of custody. Father alleged that, since January 1, 2013, Mother had been "refusing to allow Father to see their son pursuant to the [established] visitation schedule," and that Mother had failed to reimburse him for half of his health insurance premiums. Appellant's App. pp. 22-23. Mother then filed another petition for contempt, alleging that Father was denying her parenting time.

[7] In June 2013, Father filed another petition for contempt, alleging that Mother had wrongfully enrolled W.L. in preschool without Father's consent. The trial court held a hearing and preliminarily ordered that the parties would continue to share joint physical and legal custody and revised the parenting time schedule with alternating weeks of parenting time and mid-week overnight visits with the other parent. The trial court ordered that W.L. would attend preschool at Rushville Elementary School, ordered mediation, and appointed a guardian ad litem if mediation was unsuccessful.

[8] Mediation was unsuccessful, and the guardian ad litem prepared a report in December 2013, and the trial court held hearings on the modification and contempt petitions in December 2013 and January 2014. The trial court found:

> 4. Former Husband's relocation to Indianapolis was a change in circumstance so substantial and continuing it made the physical custody/parenting time agreement unreasonable and adverse to the best interests of the minor child.
>
> 5. The parties have been unable to agree on a reasonable modification of parenting time even with the assistance of mediation.
>
> 6. The parties appear to be loving parents when dealing directly with the minor child; however when dealing with each other, both parents have put their own preferences and agendas above the best interests of the child.
>
> 7. Former Wife has not given Former Husband the kind of input that would be anticipated in a situation of Joint Legal Custody. Former Husband's position as noted by his testimony that a hearing should have been held prior to [W.L's] enrollment in preschool is certainly an option but at the least inconsistent with the spirit of Joint Legal Custody.

8.      Former Husband's efforts to enforce the terms of the decree emphasized the process more than the possible adverse affects [sic] on the child.

9.      Former Wife's attitude has contributed to the problems of the parties, but her actions have not usually had the potential negative effects on the child to the degree of Former Husband's actions.

10.     The work schedules of the parties have complicated the parenting time issues, but it is the parents' own issues that have prevented a resolution to the problem.

11.     The parties can no longer communicate and cooperate adequately to allow the parties to have joint legal custody.

12.     It is in the best interests of the child that Former Wife will have sole legal custody of said minor child.

* * * * *

15.     Former Wife will give Former Husband an opportunity to participate in all relevant decisions for the minor child and will give due consideration to any suggestions of Former Husband. Exchanges under this paragraph shall be made by e-mail.

16.     Former Wife shall have sole physical custody of the minor child subject to the parenting time schedule set out in this order.

Appellant's App. pp. 5-6. Although the trial court awarded Mother sole physical custody, the parenting time schedule was "set up to allow each parent close to equal time with the child, subject to the child's evolving school schedules." *Id.* at 7. The trial court also found: "Due to the parties' unique work schedules, the nearly equal division of parenting time, [W.L.'s] current school schedule and [W.L's] need for a structured consistent schedule the first right of refusal is suspended." *Id.*

[9]     The trial court also ruled on Father's petitions for contempt. The trial court denied the petitions except that it found Mother "in contempt of Court for not

allowing Former Husband to have input on the issue of preschool enrollment contemplated by the status of joint legal custody." *Id.* at 11. Although the trial court believed "Former Wife's actions are contributing to an atmosphere that is unhealthy and not in the child's best interests," the trial court imposed no further sanctions. *Id.*

[10] Father then filed a motion to correct error. Father argued that the trial court failed to weigh the factors of Indiana Code Section 31-17-2-8, that the trial court erred by awarding Mother sole legal custody and sole physical custody, that the parenting time schedule was erroneous, that the trial court erred by suspending the right of first refusal, that the trial court misinterpreted the dissolution decree, and that the trial court should have imposed sanctions on Mother for her contempt. Mother also filed a motion to correct error, arguing that the trial court had erred when calculating health insurance premiums. After a hearing, the trial court granted Mother's motion to correct error and granted Father's motion to correct error in part and denied Father's motion to correct error in part. The trial court found that it made a mistake regarding the parenting time schedule and corrected that mistake. As for the remainder of Father's arguments, the trial court denied his motion and found:

6. The Court found it was in the best interests of the child to grant Mother sole legal custody after considering Mother and Father's inability to reasonably communicate[.]

7. The parties' ability to reasonably communicate would be considered a relevant factor to consider for legal custody under I.C. 31-17-2-8.

* * * * *

9.  It was the Court's intent to grant Father the substantive benefits of joint legal and physical custody without the technical aspects the parties use against each other to the detriment of the child's best interests.

10. The Court was greatly concerned with its decision to suspend first right of refusal. However, the Court considered the unique facts of this case, the near equal division of parenting time and the prior actions of the parties; and the Court concluded the parties exercise of the first right of refusal would only be to the detriment of the best interests of the child.

*Id.* at 12-13 (citations omitted). Father now appeals.

# Analysis

## I. Timeliness of Appeal

[11] We begin by addressing Mother's argument that we should dismiss this appeal because Father failed to file a timely motion to compel the completion of the transcript. The Court Reporter here filed a timely Notice of Completion of Transcript with the trial court clerk. Indiana Appellate Rule 10(D) then requires:

> If the Transcript has been requested but has not been filed when the trial court clerk or Administrative Agency issues its Notice of Completion of the Clerk's Record, the trial court clerk or Administrative Agency shall issue and file a Notice of Completion of Transcript with the Clerk[1] and shall serve a copy on the parties to the appeal in accordance with Rule 24 within five (5) days after the Court Reporter files the Transcript.

---

[1] The "Clerk" is the "Clerk of the Indiana Supreme Court, Court of Appeals and Tax Court." Ind. Appellate Rule 2(D).

[12] According to Mother, the trial court clerk did not file a Notice of Completion of Transcript with this court's clerk within five days. Indiana Appellate Rule 10(G) then provides:

> If the trial court clerk or Administrative Agency fails to issue, file, and serve a timely Notice of Completion of Transcript required by Rule 10(D), the appellant shall seek an order from the Court on Appeal compelling the trial court clerk or Administrative Agency to issue, file and serve the Notice of Completion of Transcript. Failure of appellant to seek such an order not later than fifteen (15) days after the Notice of Completion of Transcript was due to have been issued, filed, and served shall subject the appeal to dismissal.

Mother argues that Father did not request an order compelling the trial court clerk to file and serve the Notice of Completion of Transcript within fifteen days after the Notice was due.

[13] Father notes that, even if the trial court clerk had timely filed its Notice of Completion of Transcript by November 5, 2014, Father's brief would have been due on December 5, 2014. Father's appellant's brief was received by this court on December 5, 2014, and its deficiencies were cured and the brief was officially filed on December 19, 2014. "Because the court prefers to decide cases upon their merits, when violations are comparatively minor, are not a flagrant violation of the appellate rules, and there has not been a failure to make a good faith effort to substantially comply with those rules, the appeal will be allowed." *Cox v. Matthews*, 901 N.E.2d 14, 19 (Ind. Ct. App. 2009). Given the minor violations of the appellate rules, we will address Father's appeal. *See also In Re Adoption of O.R.*, 16 N.E.3d 965 (Ind. 2014) (holding that the Court would

address the appeal of a termination of parental rights despite the parent's untimely notice of appeal).

## II. *Modification of Legal and Physical Custody*

[14] Father argues that the trial court abused its discretion when it modified the legal and physical custody of W.L. When the trial court enters findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255 (Ind. Ct. App. 2010). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. *Id.* at 1255-56. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 1256. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. *Id.*

[15] We review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). We set aside judgments only when they are clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The rationale for this deference is that:

> [Appellate courts] are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses,

> observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Id.* (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

Therefore, on appeal it is not enough that the evidence might support some other conclusion; rather, the evidence must positively require the conclusion contended for by appellant before there is a basis for reversal. *Id.*

[16] Father's first argument concerns the relationship between the general custody modification statutes, Indiana Code chapter 31-17-2, and the relocation statutes, Indiana Code chapter 31-17-2.2. In a general custody modification case, the trial court "may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . ." Ind. Code § 31-17-2-21(a). In making its determination, the trial court "shall consider the factors listed under section 8 of this chapter," which include:

(1)     The age and sex of the child.

(2)     The wishes of the child's parent or parents.

(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)     The interaction and interrelationship of the child with:

    (A)     the child's parent or parents;

    (B)     the child's sibling; and

    (C)     any other person who may significantly affect the child's best interests.

(5)   The child's adjustment to the child's:

   (A)   home;

   (B)   school; and

   (C)   community.

(6)   The mental and physical health of all individuals involved.

(7)   Evidence of a pattern of domestic or family violence by either parent.

(8)   Evidence that the child has been cared for by a de facto custodian . . . .

I.C. §§ 31-17-2-21(b); 31-17-2-8.

[17]   However, Indiana Code Section 31-17-2.2-1 provides that when a party moves to modify custody in response to the proposed relocation of the other parent, the trial court must take certain factors into consideration:

(1)   The distance involved in the proposed change of residence.

(2)   The hardship and expense involved for the nonrelocating individual to exercise parenting time. . . .

(3)   The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . ., including consideration of the financial circumstances of the parties.

(4)   Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5)   The reasons provided by the:

   (A)   relocating individual for seeking relocation; and

   (B)   nonrelocating parent for opposing the relocation of the child.

(6)   Other factors affecting the best interest of the child.

[18] Our supreme court has addressed the interplay between the modification of custody statutes and the relocation statutes. The court held that the relocation statutes incorporate all of the Indiana Code Section 31-17-2-8 considerations but also add some new ones. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). The court also held that "the fact of relocation alone does not of itself require a change in custody." *Id.* at 1258.

[19] In his motion to correct error, Father argued that the trial court failed to weigh the specific factors of Indiana Code Section 31-17-2-8. The trial court, in its order on the motion to correct error, noted that it found a change in custody was in W.L's best interest and that the parties were unable to reasonably communicate. On appeal, Father argues that the trial court abused its discretion by failing to consider "the relocation factors under I.C. § 31-17-2-8." Father does not specify exactly which factors that the trial court failed to consider. It is unclear whether Father is arguing that the trial court failed to consider the factors of Indiana Code Section 31-17-2-8 or the relocation factors of Indiana Code 31-17-2.2-1. Indiana Appellate Rule 46(A)(8)(a) requires that appellant's contentions be supported by cogent reasoning. Father has failed to support his argument with cogent reasoning, and the issue is waived. *See, e.g., Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

[20] Waiver notwithstanding, Father relies on *In re Paternity of J.J.*, 911 N.E.2d 725 (Ind. Ct. App. 2009), where this court held that the pro se parties had failed to

present evidence on all of the relocation factors and the trial court had failed to "fully consider[]" the factors. We remanded for the trial court to hear evidence on the relocation factors. Here, the parties presented evidence on the relevant factors, the trial court issued findings, and in response to Father's argument in his motion to correct error, the trial court specifically noted that it had considered the factors of Indiana Code Section 31-17-2-8. It does not appear that the parties requested findings here. "Absent a request by a party, the trial court does not have to enter special findings that specify which factor(s) has substantially changed and explain why a change in custody is in the best interests of the child." *In re Paternity of P.R.*, 940 N.E.2d 346, 351 (Ind. Ct. App. 2010). We conclude that the trial court's analysis was sufficient.

[21] Next, Father argues that the trial court abused its discretion by modifying both physical and legal custody. As for physical custody, the trial court found that Father's "relocation to Indianapolis was a change in circumstance so substantial and continuing it made the physical custody/parenting time agreement unreasonable and adverse to the best interests of the minor child." Appellant's App. p. 5. Father's relocation from Rushville to Indianapolis made the frequent parenting time exchanges unrealistic. W.L.'s attendance at preschool, which was located in Rushville, was especially important given his therapy needs. W.L. was forced to travel between Rushville and Indianapolis many times each week, and the parties were unable to agree on a modified parenting time schedule. The parties' unusual work schedules further complicated the situation. These facts implicate a substantial change in "[t]he

interaction and interrelationship of the child with . . . the child's parent or parents" and "[t]he child's adjustment to the child's . . . home [and] school . . . ." I.C. § 31-17-2-8. We cannot say that the trial court abused its discretion by concluding that the current physical custody arrangement was not in W.L.'s best interest and that a substantial change in one or more of the factors had occurred.

[22] As for legal custody, the trial court noted that the "parties can no longer communicate and cooperate adequately to allow the parties to have joint legal custody." Appellant's App. p. 6. One of the key considerations in joint legal custody is whether "the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare." I.C. § 31-17-2-15. We have repeatedly held that joint custody is not appropriate "if the parties have made child-rearing a battleground." *Carmichael v. Siegel*, 754 N.E.2d 619, 635 (Ind. Ct. App. 2001). The testimony supports the trial court's findings that both parents "have put their own preferences and agendas above the best interests of the child" and that the parents are no longer able to communicate and cooperate enough to have joint legal custody. Appellant's App. p. 5. These facts also implicate a substantial change in "[t]he interaction and interrelationship of the child with . . . the child's parent or parents" and "[t]he child's adjustment to the child's . . . home [and] school . . . ." I.C. § 31-17-2-8. The trial court's modification of joint legal custody to Mother having sole legal custody was not an abuse of discretion.

[23] Father also takes issue with the trial court's requirement that Mother release school and medical information to Father, communicate all relevant events to him, and give him the opportunity to participate in relevant decisions concerning W.L. According to Father, this is inconsistent with the modification of joint legal custody. Joint legal custody "means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." I.C. § 31-9-2-67. Under the trial court's order, Mother and Father do not share authority and responsibility; rather, Mother has ultimate authority and responsibility for major decisions concerning W.L. However, the trial court required Mother to consider Father's wishes and communicate important information to him. This appears to have been a courtesy granted to Father that is not inconsistent with its modification of joint legal custody.

### III. Right of First Refusal

[24] Next, Father argues that the trial court abused its discretion by suspending the right of first refusal. Section I(C)(3) of the Indiana Parenting Time Guidelines provides:

> When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time, if providing the child care by the other parent is practical considering the time available and the distance between residences. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost and without effecting [sic] child support. The parent

exercising additional parenting time shall provide the necessary transportation unless the parties otherwise agree.

**Commentary:**

*The rule providing for opportunities for additional parenting time promotes the concept that a child receives greater benefit from being with a parent rather than a child care provider who is not a household family member. The household family member is defined as an adult person residing in the household, who is related to the child by blood, marriage or adoption. The rule is also intended to be practical. When a parent's work schedule or other regular activities require hiring or arranging for a child care provider who is not a household family member, the other parent should be given the opportunity to provide the care. Distance, transportation or time may make the rule impractical. The period of absence which triggers the exchange will vary depending upon the circumstances of the parties. Parents should agree on the amount of child care time and the circumstances that require the offer be made. It is presumed that this rule applies in all cases which the guidelines cover; however, the parties or a trial court may, within discretion, determine that a deviation is necessary or appropriate. Any such deviation must be accompanied by a written explanation. See Shelton v. Shelton, 840 N.E.2d 835 (Ind. 2006).*

*This section is sometimes mistakenly referred to as the "right of first refusal." It is more accurate to refer to this section as an opportunity to exercise additional parenting time.*

A significant source of disagreement between Father and Mother was the fact that Mother allowed her parents to spend the night at her house to care for W.L. on nights that Mother worked and had parenting time with W.L. Father wanted to have parenting time with W.L. during that time instead.

The trial court deviated from the Parenting Time Guidelines and concluded: "Due to the parties' unique work schedules, the nearly equal division of parenting time, [W.L.'s] current school schedule and [W.L's] need for a structured consistent schedule the first right of refusal is suspended."

Appellant's App. p. 7. Father raised this issue in his motion to correct error, and the trial court noted:

> The Court was greatly concerned with its decision to suspend first right of refusal. However, the Court considered the unique facts of this case, the near equal division of parenting time and the prior actions of the parties; and the Court concluded the parties exercise of the first right of refusal would only be to the detriment of the best interests of the child.

*Id.* at 13.

[27] The Preamble of the Parenting Time Guidelines notes that "[d]eviations from these Guidelines by either the parties or the court that result in parenting time less than the minimum time set forth below must be accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case." Ind. Parenting Time Guidelines Preamble(C)(3). The trial court issued a written explanation of its deviation. The Commentary to the Guideline even notes that "*Distance, transportation or time may make the rule impractical.*" Ind. Parenting Time Guideline I(C)(3), Commentary. The trial court was clearly concerned about the issue but chose a resolution that was in the best interest of W.L. given the distance between Mother and Father's residences, the distance between Father's residence and W.L.'s preschool, the parties unusual work schedules, and the parties' inability to cooperate with each other. Under these circumstances, the trial court did not abuse its discretion by suspending Father's right of first refusal.

### *IV. Parenting Time Schedule*

[28] Finally, Father argues that the trial court abused its discretion regarding the parenting time awarded to Father. According to Father, the parenting time schedule established by the trial court makes "the number of days that the child attends school determinative [of] the number of overnights Father sees his son." Appellant's Br. p. 19. The trial court noted that the parenting time schedule was "set up to allow each parent close to equal time with the child, subject to the child's evolving school schedules." Appellant's App. p. 7.

[29] The parenting time schedule created by the trial court provided Father with more parenting time than the minimum parenting time established by the Parenting Time Guidelines. The trial court attempted to maximize the parties' time with W.L., while also coordinating around their work schedules and W.L.'s preschool schedule and limiting W.L.'s time spent driving back and forth from Rushville to Indianapolis. Under the circumstances, we cannot say that the trial court abused its discretion.

## Conclusion

[30] We decline Mother's request to dismiss Father's appeal. However, we conclude that the trial court did not abuse its discretion regarding the modification of custody, suspension of the right of first refusal, and Father's parenting time. We affirm.

[31] Affirmed.

[32] May, J., and Pyle, J., concur.